Pierce v. Pierce.

PIERCE v. PIERCE.

Divorce: DESERTION. In order to justify the abandonment of the husband by the wife, his conduct toward her must have been such as would constitute the foundation of an action on her part for a divorce.

*Appeal from Cedar District Court.*

THURSDAY, FEBRUARY 22.

ACTION for divorce, brought by the husband against the wife, on the ground that she had willfully deserted him and absented herself without a reasonable cause for the space of more than two years. The defendant in her answer denies that she had absented herself without reasonable cause; and also sets up certain acts of cruel and inhuman treatment, etc., upon which she asks alimony, etc. Jury trial; verdict and judgment for defendant, simply denying to plaintiff a divorce. The plaintiff appeals.

*Wolf & Landt* for the appellant.

COLE, J. — The parties, prior to their marriage, lived in the same neighborhood and about one-half mile apart, and were members of the same church. The plaintiff was forty years old and was keeping house, his mother and sister living with him. The defendant was only twenty-two years old and was living with her father's family. They were married on Sunday, the 28th day of April, 1867; attended church together, both forenoon and afternoon, and after the congregation was dismissed they went together to

the house of the plaintiff. They found the mother there, who admitted them to the house, with affected surprise, and furnished them seats; after ten or fifteen minutes, the sister, who had been at church, came in, and, on her invitation, the wife went into the parlor, laid off her wrappings and was shown her room, etc. During the evening they sat in the parlor, and the conversation was mainly between the plaintiff and his sister, on a topic of the day's sermon. The defendant testifies that the sister's conduct toward her was scornful and cool; that she passed dishes, at the next morning's breakfast-table, by her to her husband; that defendant was invited to, and took the head of the table, and the position of mistress of the household was surrendered to her; that on the day after the wedding, as her husband was taking home the buggy they had used the day before, she spoke to him at the gate and he answered her coolly; that when he came home, she was brushing his coat at the gate and spoke to him, but he passed without noticing her; that once afterward when he was plowing in the lot (or garden) she spoke to him and he did not answer her until he was half way across the lot; that the plaintiff's mother treated her kindly; that her husband was careful of his attentions to her in the presence or hearing of his sister; that when they had been absent, he seemed more pleased at the sister's return than at her return; that she was at her father's and spent a day and night each week for two weeks; that on the third Friday night after their marriage she made up her mind to go away; her husband went to bed and left her sitting alone; she went to bed and found him lying with his face to the wall; in the night she got up to make preparations for leaving; he said he wanted to talk to her, and she asked him why he did not talk when he had a chance; on the next morning she told him she was going home, he made no reply, and she went before breakfast, on the morning of the 18th day of May, 1867; he came to see her

that day, but they have never since lived together; she has one child, the fruit of the marriage.

On cross-examination she made these answers: Did plaintiff speak unkindly to you after your marriage? No. Did plaintiff in any way abuse or ill-treat you? No; he only treated me coldly. Did plaintiff's sister say any unkind word to you? No. Did she prevent you from doing any thing about the house you wanted to do? No. Did she ever tell you not to do any thing you wanted to? No. Did she ever order you to do any thing, or treat you as a servant? No; except she told me to bring in the clothes. And she also testified that, when plaintiff came to see her after she left him, she refused to return with him; she was in good health when she lived with him, when she left and now. It is also in evidence that the matter of their separation was before the session of the church, and what there occurred, and very much other matter tending to explain, modify or aggravate the substantial facts above set forth, taken from the testimony of the defendant herself. The charge of the court to the jury is very full, clear and comprehensive, and meets with our entire approval. Nor does the appellant complain of it. The fourth paragraph is as follows: "The defendant insists that she had a reasonable cause for the separation and absence; and much depends on the proper construction of the term 'reasonable cause.' In other words, what acts or treatment by the husband will justify the wife in abandoning him? You are instructed on this question that the law of this case is, that in order for the defendant to successfully defend the action, it must appear to you from the testimony that the plaintiff's conduct toward the defendant, and which caused the separation, was such as could be made the foundation for a judicial proceeding on her part for a divorce. It need not appear to you that his acts and conduct were such as would at all events entitle her to a divorce; but it will be a sufficient defense if the said acts and con-

Pierce v. Pierce.

duct were such as would *prima facie* entitle her to a divorce.

We review the question presented to us in this case, thus, as being, whether the testimony on the part of defendant, when taken in connection with every thing favorable in the whole case, makes even a *prima facie* case for a divorce, if asked for by defendant? In our opinion this question must be answered in the negative; and as a consequence that the court erred in refusing to set aside the verdict of the jury as being contrary to the evidence in the case.

It may well be conceded, as the court below substantially told the jury, that there may be inhuman treatment without evidence of personal violence; for, whatever form the ill-treatment assumes, if a continuation of it involves the life or materially affects the health of the wife, it is inhuman treatment within the meaning of the statute. It is not impossible that the alleged coldness on the part of the husband thus early manifested in the married relation, might grow into such proportions in the process of time as to justify the course pursued by the defendant. But surely that point had not been reached, and we are not permitted to indulge in the supposition that it would be to anticipate a cause not existing in fact. This is said upon the basis that every thing testified to by defendant were real and stubborn facts, as we entertain no doubt she believed them to be. But yet we cannot free ourselves from the suspicion that they were largely more imaginative than real; and that a reasonably patient and dutiful trial would have so demonstrated them to the defendant herself.

To sustain this defense, while it would operate to defeat a divorce in this case, would nevertheless sanction such a lax construction of our statute as would lead to a multiplicity of suits for divorce, and the disrupting of many families who would otherwise be peaceful, happy and prosperous. We feel constrained by every consideration of

fidelity to the just and legitimate construction of our statute, to the peace and welfare of the families of the State, as well as to equal and exact justice between these parties, to hold that this defense is quite insufficient and that the judgment must be

Reversed.