LENA F. DUNHAM, appellee, v. EARL CLIFFORD DUNHAM, appellant.

No. 48199.

(Reported in 56 N.W.2d 606)

JANUARY 13, 1953.

Edward J. Dahms, of Cedar Rapids, for appellant.

Dwight Krumboltz, of Cedar Rapids, for appellee.

SMITH, C. J.—Plaintiff, Lena F. Dunham, commenced this suit September 12, 1951, alleging cruel and inhuman treatment without specification. Two days later defendant answered denying the alleged cruel treatment. On October 19, 1951, plaintiff by amendment sought and obtained a writ enjoining defendant "from further occupying the home * * * during the pendency of the action." It was served the same day.

The case stood thus for three months when, on January 21, 1952, defendant filed cross-petition for divorce on the ground of alleged nagging, destroying his peace of mind with "resulting injury and nerve tension." He also complained that he had, by injunction, been deprived of his home for four months, and alleged he was "unable to meet the situation financially; that the encroachment of age, infirmity and disease have made heavy inroads; that he will be unable to work gainfully in a very short period of time; * * * that the plaintiff has been designing and scheming for several years to obtain full control and ownership of the little home which defendant has acquired and improved * * *; defendant admits * * * plaintiff is suffering physical infirmity and that the situation as to both parties is pitiable."

Defendant also asked that the homestead be sold and the proceeds so divided as to permit each party to "seek admission to a home for the aged and thus have a little comfort in the remaining few years of life allotted to each."

Plaintiff filed no reply to either answer or cross-petition and the case went to trial the day the cross-petition was filed. Both parties appeared in person and by attorney. Counsel for plaintiff announced he would offer no evidence upon her petition as amended and it was accordingly dismissed.

The case proceeded to trial upon defendant's cross-petition. Defendant and a corroborating witness testified for him and plaintiff testified in her own behalf. The court thereupon entered decree granting defendant a divorce. There is no appeal by plaintiff.

Defendant however appeals from the property and support provisions of the decree which award plaintiff life use of the home with remainder to both as tenants in common, she to pay taxes and assessments, carry fire and wind insurance and make all necessary repairs less than $25 per annum and keep the property in "reasonable condition." The decree further provides that needed repairs in excess of $25 per annum are to be paid by both parties, each one half.

The decree also awards plaintiff the "present money in the United State Bank of Cedar Rapids, Iowa" and provides "each party is to assume and pay any obligation made by them."

Plaintiff is given the household goods. Defendant's personal belongings, tools and equipment and radio are awarded him.

The decree requires defendant to "contribute toward the maintenance of the plaintiff the sum of $10 per week, first payment to be made on March 15, 1952, and subsequent payments weekly thereafter until the further orders" of the court. Each party is to pay "any additional attorney fee that may be owing in this cause and * * * one half the costs."

I. Defendant argues "allowance" cannot be made to the wife unless the divorce decree is in her favor, citing only 19 C. J., Divorce, section 567, page 243. Neither the cited authority nor the later text in 27 C. J. S., Divorce, section 229b(2), supports the rule as being absolute in all jurisdictions. The later C. J. S. citation (page 941, note 80) states: "Nevertheless, in many jurisdictions the statutes have been construed as authorizing, or at least as not preventing, the award" to a wife whose husband has been granted the divorce, adding: "and the courts will exercise their power and discretion in this respect by awarding alimony where from all the facts and circumstances it seems equitable to do so."

That is unquestionably the rule in Iowa. See Zuerrer v. Zuerrer, 238 Iowa 402, 409, 27 N.W.2d 260; Blain v. Blain, 200 Iowa 910, 912, 205 N.W. 785; section 598.14, Iowa Code, 1950; Mitchell v. Mitchell, 193 Iowa 153, 157–160, 185 N.W. 62; McDonald v. McDonald, 117 Iowa 307, 90 N.W. 603.

II. Defendant argues the allowance to plaintiff is "excessive and arbitrary and far beyond the ability of the husband to pay." The parties were married in 1941. They have no children. At time of trial defendant was fifty-nine years old, his wife sixty-four. The little home stood in plaintiff's name but had originally been "in both our names." Defendant testifies it was changed because she "nagged me so my children wouldn't take it away from me." He estimates its value to be about $3200 (plaintiff says "it should be $3950 or more") with a mortgage of $1100 against it. The home was acquired by the purchase of a vacant lot for $400 upon which $120 was paid down; then a little building ("16x12", plaintiff says) was purchased for $720 and moved on it. Defendant refers to a "12x16 addition" and a kitchen built on by himself.

The testimony is not clear as to what part of the cost of the home was paid by plaintiff. Defendant says she "contributed between $400 and $500." Plaintiff testifies the payments were out of a bank account to which both had contributed their earnings. The account was in her name, defendant says—"she took care of everything because I can't read nor write."

The earning capacity of each is small. Defendant says he earned $1200 the year previous to the trial. "I wasn't able to work part of the time. The year before that I made $832." On cross-examination he estimated: "I average $39" per week. Concerning his physical condition he testifies "I fell off a house two years ago—40 feet. I still got it in the back and shoulder. * * * I can't work like ordinary men. I just drag myself along to work."

As to his wife he says: "She has bladder trouble. She had cancer of the bladder as near as I can find out and so the doctor told me out of his own mouth. He says the lining of her bladder is only the thickness of thick newspaper. At any time her bladder is liable to fill up and burst." Plaintiff simply says: "The doctor didn't seem that he cared for me to work, but I went on anyway. The doctor said that the nature of my illness was such I was better off being alone." She also testifies "I've earned $520 since the 7th of September" and says she now makes $24 per week washing dishes at a cafe.

The record is not very clear as to the amount of the bank account awarded to plaintiff by the decree. Plaintiff testifies: "When we separated $245 was left in my name. It is still there. I set off $200 for him. I gave him a book to identify himself with. He had the book in his billfold at that time. He has a book showing there is $200 on deposit in the United State Bank on 16th Avenue for him."

Enough of the evidence has been set out to pose the problem confronting the trial court. The allegations and proof of plaintiff's "inhuman treatment" revealed no such gross conduct as should cause her to forfeit her right in the property they had accumulated by their joint efforts during their ten years of married life. Defendant himself testifies: "I was married about five years when I bought this lot. I was saving all the time. * * * I didn't have any money when I married Mrs.

Dunham. She had about 15c. We worked together and at the end of five years we had a $1000 saved." Plaintiff's conduct had apparently caused no animosity in defendant's mind: "I don't want to beat the little woman out of nothing at all. I am not mad with her. I want to get up and shake hands with her. I am that kind of a man."

The presiding judge had the parties before him, which doubtless aided him in assaying the situation—an advantage denied us. The defendant in his cross-petition correctly described it as "pitiable" for both parties.

We have carefully studied the somewhat unsatisfactory record and feel the decree is as near right as can be presently devised under the unfortunate circumstances. The weekly payments are expressly limited to continue "until the further orders of the court" and of course the statute permits modification in event of changed conditions.

The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur.