ELLA FARRAND, appellant, v. RALPH R. FARRAND, appellee.

No. 48527.

(Reported in 67 N.W.2d 20)

NOVEMBER 16, 1954.

REHEARING DENIED JANUARY 14, 1955.

Emmert, James, Lindgren & Eller, by S. R. Eller, of Des Moines, for appellant.

Holliday, Miller, Myers, Stewart & McDowell, by Alex M. Miller, of Des Moines, for appellee.

THOMPSON, J.—At the time of the trial below the plaintiff was 65 years of age and the defendant two or three years younger. They were married in 1910. In 1906, when they first met, plaintiff was a public stenographer and defendant a bellboy in an Ottumwa hotel. After their marriage they removed to Des

Moines and procured positions in a hotel there. In 1921 the defendant was employed by the Boss Hotel Company to manage a hotel at Algona, and later at Independence, Iowa. This was largely through the initiative of the plaintiff, and she worked in the hotels which defendant managed for long hours, as a housekeeper, and performed chambermaid services many times when help could not be procured. She was not paid separately for this work, and the couple's funds and other resources were at all times kept in the name and under the control of the defendant.

In 1925 the defendant purchased an interest in the Victoria Hotel in Des Moines. Here plaintiff did the same kind of work as at their other locations. In 1929 defendant purchased a hotel at Brainerd, Minnesota, where plaintiff again worked as before. This property defendant sold in about one year at a profit of $10,000. They then returned to the Victoria Hotel, where plaintiff worked until 1941, although her services were in a supervisory capacity.

In 1931 plaintiff found the defendant with a woman in his room, and again in 1941 a more aggravated incident of the same type occurred. After the second offense defendant did not live with plaintiff further, although each continued to occupy separate quarters in the hotel. In 1945 a separation agreement was made by virtue of which defendant paid to plaintiff $375 per month until 1953. On June 30, 1953, the hotel was sold to R. A. Vanier for the sum of $58,000, of which $13,000 was paid in cash and the balance by a note. Defendant's sister, Elsie F. Hartnagle, owned a five-twelfths interest in the hotel and the defendant seven-twelfths. Each has a proportionate interest in the note representing the unpaid balance of the sale price of the hotel. The note is payable in installments of $466.65 per month until December 1, 1963, when the entire balance of principal and interest becomes due and payable. The note, in the principal sum of $45,000, with interest at four and one-half per cent per annum, is payable to Ralph R. Farrand and/or Elsie F. Hartnagle. The installment payments of $466.65 per month are to be applied first to the interest then accrued and the remainder to the principal sum. The monthly payments are, of course, divided between defendant and Elsie F. Hartnagle in the proportions of seven-twelfths and five-twelfths respectively. It is

the trial court's designation of the plaintiff's interest in the proceeds of this note which is unsatisfactory to her, and which forms the major basis of her complaint on this appeal.

I. The evidence in the case is almost entirely that offered by the plaintiff. The defendant did not take the stand in his own behalf, although he was called by the plaintiff as her witness on some financial and property matters. His only evidence was that of a doctor who testified as to his physical condition. He made no attempt to deny the accusations of marital misconduct made against him by the plaintiff, and since we find nothing inherently improbable or unreasonable in her testimony or that of other witnesses for her we accept it. It is the record upon which we must consider the case. The trial court found it sufficient to require a divorce for plaintiff, and there is no appeal therefrom.

The important question raised by the plaintiff's appeal is the amount of defendant's property which should be awarded to her. We have set forth sufficient facts above to indicate that she took an important part in such financial success as the defendant achieved. Indeed, much of the initiative and ambition which started him on his way were furnished by his wife. Likewise she aided by working long hours, much of the time performing the most menial services. Mrs. Boss, the wife of the hotel owner who first employed them, testified they would not hire a manager of a small hotel unless he were married and his wife was qualified to help with the operation. It would serve no good purpose to detail further the record of her part in the acquisition of property and assets by the defendant. It will suffice to say that we think, in addition to the other property awarded her by the trial court, she should be held to be the owner of one half of defendant's seven-twelfths interest in the Vanier note above referred to. The trial court did, in fact, allot to her the sum of $130 per month from the defendant's share of the payments on the note, in addition to giving her certain other items not in controversy here. But the court further provided: "That such payments as above set forth be awarded so long as the plaintiff lives and be terminated at the death of either." This means, of course, that if defendant should die presently and before the note is paid in full plaintiff would receive no further payments and would

lose all interest in the note or the stock which secures it. We think this arrangement inequitable and unfair to the plaintiff under the record here.

■ There is to be considered, in addition to the record of plaintiff's part in the improvement of defendant's social and financial position, the marital delinquencies upon which the decree for divorce was based and which stand undenied. The misconduct of the guilty party which brings about a divorce is material in considering what is equitable in the way of division of property. Murray v. Murray, 244 Iowa 548, 554, 57 N.W.2d 234, 238, and cases cited. We have taken all of these matters into account in arriving at our conclusion that plaintiff should have a secured one-half interest in the defendant's share of the Vanier note and that it should not terminate, either upon his death or hers. The parties have cited many authorities bearing upon the question of equitable division of assets in divorce cases; but it is of course recognized that no two cases are ever exactly alike upon their facts, and we refrain from analyzing those relied upon in argument. Such an attempt would neither support nor weaken the conclusion we have reached nor enlighten the legal profession in future cases.

■■ II. The defendant urges strongly that the courts have held installment payments of alimony to a divorced wife terminate as a matter of law upon the death of either party. He cites many cases which are thought to hold this doctrine: Siver v. Shebetka, 245 Iowa 965, 65 N.W.2d 173; In re Estate of Yoss, 237 Iowa 1092, 24 N.W.2d 399; O'Hagan v. Executor of O'Hagan, 4 (Clarke) Iowa 509; and several authorities from other jurisdictions. Our examination of the cases cited, and others, shows the holding to be that if the parties have so agreed, periodic payments of alimony do not terminate upon death of one or both of the parties. Whether this means that in the absence of an agreement they do terminate, as defendant thinks, we do not decide. It is apparent from our discussion in Division I that we are dealing here with a division of property rather than periodic payments of alimony.

Section 598.14, Code of Iowa, 1954, provides: "598.14 Alimony—custody of children—changes. When a divorce is decreed, the court may make such order in relation to the chil-

dren, *property*, parties, and the maintenance of the parties 'as shall be right. * * *." (Italics supplied.) The order we are here considering relates to the property rather than to the maintenance of the wife. It is true the property is in the form of a promissory note payable in installments; but this is the only resemblance to periodic payments to the wife for her support. She takes her interest in the property as it is, that is to say, she owns a seven-twenty-fourths interest in the note, which she must accept in payments in accordance with the tenor of the instrument. But the payments are in no sense periodic payments of alimony.

III. The defendant likewise points out the undisputed fact that from 1945 to 1953 the plaintiff received some $375 per month, with perhaps other sums, under the separation agreement. In all, she admits receiving during this period some $50,000. A part of this was $9500 representing one half of the net sale price of a cottage on Lake Okoboji, the defendant retaining the other half. This was an equal division of property made some time before the present case was commenced. It was provided for in the separation agreement. It may be said in passing that under the record here neither party has shown any great amount of thrift in the handling or conservation of their funds; but the point is not important. The sums paid to plaintiff for her support under the separation agreement have no place in our consideration of what is a fair division of the property accumulated by the joint efforts of the parties. As the defendant's tax returns show, he had a gross income for 1946 of $12,634.92; for 1947, $16,659.92; for 1948, $19,958.92; for 1949, $16,363.42; for 1950, $16,992.42; for 1951, $12,984.92. In addition to these amounts, he received room and board without charge at the hotel.

In view of defendant's income we do not find the allowance of $375 per month to plaintiff to be more than her husband's position in life, and her own, required. Separate maintenance for a wife is an allowance for her support, and the sums paid to her are generally not to be charged against her in a later divorce action when she asks alimony. 42 C. J. S., Husband and Wife, section 624.

In Shipley v. Shipley, 187 Iowa 1295, 1305, 175 N.W. 51, 55, we said: "Independent suits for alimony do not involve an adjudication of relative property rights. * * * Allowance is made,

suitable for the wife, measured by the situation of the parties and the income of the husband, but no portion of the estate is set apart, or a sum allowed in gross. * * * It terminates whenever the necessity for it ceases. The sole purpose is to afford the wife support during separation."

See also 24 Iowa Law Review 137, 139. We conclude the sums paid for the wife under the separation agreement have no bearing on the question of division of property in the present action.

IV. We have said the decree of the lower court should be modified to provide that the plaintiff is the owner of one half of the defendant's interest in the Vanier note. The note, however, is secured by stock of the Victoria Hotel Company, and it expressly provides there shall be no personal liability against the maker, the holder's only recourse being against the pledged stock. We have pointed out the note is payable to Ralph R. Farrand and/or Elsie F. Hartnagle. Its ownership in case of the death of the defendant would, the plaintiff fears, be in doubt. Since we hold that plaintiff should be secured in her ownership of seven twenty-fourths of the note, we think the decree of the trial court should be modified in these respects: It should provide that plaintiff is the owner of one half of defendant's interest in the note, and is entitled to receive one half of all sums collected by defendant upon it, these to be paid in monthly installments as made by the maker of the note. This interest of the plaintiff should not terminate with the death of either or both parties.

The cause is remanded to the trial court for the purpose of ascertaining the present unpaid balance on the note, and plaintiff shall have judgment against defendant for one half of his interest in such balance, this judgment to be a lien upon any interest of the defendant in the note and the stock securing it and upon any real estate he may own. Interest on the judgment shall be at four and one-half per cent per annum.

Execution shall not issue so long as one half of defendant's seven twelfths of the monthly payments of $466.65 shall be paid to the clerk of the Polk County District Court to apply on the judgment. But if at any time, there being no default in the payments on the Vanier note, the defendant shall not make said pay-

ments to the clerk of the court for a period of sixty days, execution shall issue on said judgment at the request of the plaintiff.

The decree should further provide that if default be made in payments on the note of R. A. Vanier the defendant shall promptly proceed to forfeit and secure the possession and ownership of the stock in the Victoria Hotel Company for the benefit of himself and the plaintiff, in accordance with the provisions of the terms of the note and of the stock purchase agreement, each dated June 30, 1953, said note being executed by R. A. Vanier and payable to Ralph R. Farrand and/or Elsie F. Hartnagle, and said stock purchase agreement being between the same parties. When the stock is repossessed, the plaintiff shall be the owner of one half of the defendant's seven-twelfths interest, or seven twenty-fourths of the whole stock; and defendant shall by the terms of the decree be required to do all things and execute all instruments necessary to make plaintiff's ownership firm and effective. When such ownership is so made effective in plaintiff, whatever balance of the judgment then held by plaintiff against defendant remains unpaid shall be by plaintiff satisfied of record.

It should be further provided by the decree that if defendant shall die at any time before plaintiff's judgment is fully satisfied, either by payment or by making over to plaintiff her share of the stock in the Victoria Hotel Company in case of default in payment of the Vanier note as above set out, said judgment shall not be canceled but shall be effective against his estate. Payments made on the Vanier note shall continue to be applied on said judgment as above provided; but if it shall be determined that the interests of Ralph R. Farrand and Elsie F. Hartnagle in said note are those of joint tenants and that upon the death of Ralph R. Farrand his entire interest passes to his survivor, Elsie F. Hartnagle, then plaintiff may proceed to collect the unpaid remainder of her judgment from defendant's estate. Plaintiff's interest in said judgment shall, if any part of it remains unsatisfied upon her death, pass to and become a part of the assets of her estate.

The cause is remanded to the trial court for determination of facts and decree in accordance with this opinion. All costs taxed against the appellee.—Modified, affirmed and remanded.

All Justices concur.