THEODORE NELSON, appellee, v. MARGARET A. NELSON, appellant.

No. 48648.

(Reported in 68 N.W.2d 746)

MARCH 8, 1955.

Ted Sloane, James Lawyer and Don Hise, all of Des Moines, for appellant.

Leo J. Lucier, of Des Moines, for appellee.

LARSON, J.—The plaintiff, Theodore Nelson, age 72, and the defendant, Margaret A. Nelson, age 75, were married October

12, 1948, and resided in West Des Moines, Iowa. It was the third marriage for each. Both were receiving pensions from the Rock Island railroad, plaintiff being a retired locomotive fireman, and defendant's late husband having been a brakeman. They had been neighbors for over thirty years and knew each other well. Defendant's health was good, but plaintiff was ailing, and not long after this marriage he took sick and was bedridden for ten weeks. Defendant tenderly cared for him, and for the first year they seemed to get along well. Then from the record we learn the defendant unexpectedly left the home, was gone about a week, and did not advise plaintiff why she left nor where she went. Thereafter disagreements involving finances arose and some friction sprang up between defendant and plaintiff's married daughter Pauline. The second year their mutual confidences appeared to dissipate. As a result of an incident involving possession of some government bonds, defendant gathered up her possessions, left the family home on the 14th of October, 1950, and did not return. The parties have not lived together since that date. She filed an action for separate maintenance against plaintiff in March 1952, but later dismissed it. On December 9, 1953, plaintiff commenced this action and it was tried to the court April 28, 1954. From judgment and decree for plaintiff, with an award of alimony to defendant in the sum of $20 per month for a period of two years and an award of $100 for defendant's attorney, defendant appealed. Defendant's contention, argued before us, raises but two issues: (1) whether or not the defendant willfully deserted her husband and absented herself without reasonable cause for a space of two years; and (2) whether or not the award of alimony to defendant of $20 per month for only two years was grossly inadequate.

I. After carefully reviewing the record we are of the opinion plaintiff has proven a case of desertion for the statutory period of two years such as to entitle him to a divorce, and the trial court's decree on this ground must be upheld. The statute provides for such relief when one willfully deserts his spouse and absents himself "without a reasonable cause for the space of two years." Section 598.8, subsection 2, and section 598.9, Code, 1954.

The oft referred to and perhaps leading case in Iowa upon this Code provision, Kupka v. Kupka, 132 Iowa 191, 192, 109 N.W. 610, states the elements necessary to maintain such an action are (1) intent to desert, (2) cessation of the marriage relation, (3) continuance of the intent and the cessation of the relation for the statutory period, and (4) absence of reasonable cause. We said therein at page 192: "* * * there must be not only a separation, but an intent to cease to live together as husband and wife, an abnegation of all the duties of the marriage relation."

We quoted with approval from this case as late as Parker v. Parker, 244 Iowa 159, 162, 55 N.W.2d 183, 185, as follows: " ' "Desertion consists in the actual ceasing of cohabitation and the intent in the mind of the offending party to desert the other." ' "

Also see Paulsen v. Paulsen, 243 Iowa 51, 56, 50 N.W.2d 567, 570, and Schaefer v. Schaefer, 245 Iowa 1343, 1352, 66 N.W.2d 428, 433.

Defendant does not deny that she willfully left the family home nor deny that she intended to cease living with plaintiff, although at one time she said: "I will never get a divorce from you because I will never let you make a sucker out of me * * *." She does not contend he told her to leave nor that she intended to return. By her 1952 separate-maintenance action she further indicated her continued resolve not to live with the plaintiff and disclosed no desire on her part to re-establish the family home. Her reason for dismissing that action was not that she changed her mind, but that "I went broke and could not pay for it." The separation admittedly was for over two years. The two contentions relied upon by defendant to defeat plaintiff's right to a divorce under this statute are (1) that the departure was by agreement, and (2) that she did not depart without just cause. If either contention is correct, of course it would bar plaintiff's right to a divorce for desertion, for we have repeatedly said, to constitute a ground for divorce, the desertion must have been without just cause and have existed for two years prior to the commencement of an action based thereon. Carr v. Carr, 212 Iowa 1130, 1133, 237 N.W. 492; Schaefer v. Schaefer, supra; Pfannebecker v. Pfannebecker, 133 Iowa 425, 110 N.W. 618, 119

Am. St. Rep. 608, 12 Ann. Cas. 543; Fagan v. Fagan, 186 Iowa 1279, 173 N.W. 875.

The trial court found no just cause for defendant's departure, and we must agree. Financial disputes, together with defendant's departure the year before, apparently aroused in plaintiff considerable concern, for they had placed all his valuable papers including four $500 bonds made by him payable to them both, for safekeeping in defendant's bank lockbox. He apparently planned to get them back. The method he used is condemned and challenged by defendant. It is her contention he gave her the bonds as promised to reimburse her for pension funds she lost by her marriage to him. He denied this assertion. She testified on this particular occasion they went to the bank together, opened the box to get and cash a $100 bond to cover his immediate needs; that he sent her on an errand, removed all the bonds from the bank box, and then closed it before she returned. Plaintiff admits taking all his papers, including the bonds, from the box. This act clearly was the immediate cause of the quarrel and her departure. When she learned of his deed that evening, defendant testified as follows: "You did not take one of my bonds, too?" and he replied, " 'I sure did and I want you to know I worked for that and there is no woman going to walk out of this house with more than Pauline has.' " Thereupon she stated she did not know she was going to leave, and as the quarrel developed she testified he said twice, " 'I am not going to tell you to go and I am not going to tell you to stay' ", and she replied, "I will have to go. I can't stay where I am not wanted." Whereupon he said, " 'That just suits me fine.' " All this plaintiff denied, and he testified, "I presumed that we were going to live the rest of our lives together" and "She would be there yet if she hadn't moved out." The next day defendant called her granddaughter and said: "Make a place for grandmother, I am coming over", and she did pack her possessions and moved out. Plaintiff explained he did not want her to leave but could say nothing when she left, and did not ask her to stay "because I had asked her before."

We are unable to determine the truth of these exact conversations, but we are clear that a quarrel which arose over the

bonds caused defendant to depart. Plaintiff's acts alone were not sufficient cause for her to leave him. A different attitude on her part then would have calmed his fears and distrust. Her hostile reaction tended only to confirm his fears. She disclosed dissatisfaction and disgust. Although he had bought a new gas furnace for their home, provided food, heat, telephone and other incidentals, except her clothing, and had cashed in a $500 bond to establish a joint bank account after his illness, at her insistence, and had paid her $20 per month for her own use, about which he said, "I don't know what she did with the money", she indicated her attitude when she said, "He is the cheapest screw that ever lived, that man." Also when asked by counsel if she were only interested in what she could get out of it, she said, "I was interested in my pension and if I could have got that, he could have gone scot free." She further stated, "* * * only that girl [meaning plaintiff's daughter], she is scared a penny will get out of her hands." Other charges and denials of less consequence appear in the record, but we are unable to find therein substantial justification for defendant's departure from the family home and must therefore hold there was no just cause for her leaving on that occasion. Such disputes over finances scarcely can be classified as mistreatment justifying desertion. She said prior to that time "he was good to me." No contention is advanced that such acts amounted to cruel and inhuman treatment, and it is clear such treatment must approach, if not be, inhuman or reasonably bad treatment to be found adequate cause.

We said in the early Iowa case of Pierce v. Pierce, 33 Iowa 238, 240, 241, that in order for the wife to successfully defend against such an action, it must appear from the testimony that the husband's conduct toward the wife which caused the separation was such as could be made the foundation for a judicial proceeding on her part for a divorce. We said there she is justified in leaving if his "acts and conduct were such as would prima facie entitle her to a divorce." Later, however, we modified that requirement and held in Tipton v. Tipton, 169 Iowa 182, 186, 151 N.W. 90, Ann. Cas. 1916C 360, that misconduct of the complainant may be found sufficient to excuse the departure of the spouse even though the conduct itself was not a ground

for divorce, citing, for example, nonsupport as a justification for departure, which is not a ground for divorce. Each case must depend upon its own facts as to whether or not the alleged misconduct would justify a separation and thereby fail to sustain the allegation necessary to prove statutory desertion. Also see Kupka v. Kupka, 132 Iowa 191, 195, 109 N.W. 610. Here then we must only decide whether a just or reasonable cause was shown which would justify her leaving plaintiff's household. We think the showing insufficient. It is true, both parties were sensitive, perhaps unduly so, and each made statements and performed acts not likely to gain faith and confidence in the other. This was not the kind and sympathetic treatment necessary for marital happiness nor such as was expected by the parties, but it falls far short of just cause for willfully leaving one's spouse.

 It is also true a separation by agreement, unless terminated by a request to again cohabit, cannot be made the basis for a divorce on the ground of desertion. Nelson on Divorce and Annulment, Second Ed., section 4.12, page 85; Fagan v. Fagan, supra, 186 Iowa 1279, 173 N.W. 875; McElhaney v. McElhaney, 125 Iowa 333, 101 N.W. 93. But was the departure here with plaintiff's consent? We believe not, for although he made no effort to stop her and admittedly did not ask her to remain on that occasion, yet he was not required to do so legally—morally, perhaps. Certainly there was no evidence that he asked her to leave, and we believe he did not want her to leave him. We do not find in the conversation related by defendant, even though true, an invitation for her to leave nor an agreement that she do so. The obvious explanation is that, from the fact that she had already left for one week without explanation or cause, he had lost confidence in himself and in her loyalty to him. He said, "I could not talk to her and ask her why she was leaving." This emotional reaction is understandable and we feel in his silence cannot be found a consent that she depart. Furthermore, unless she left with good cause or by his consent, it was her duty to offer to return. He did not hear from her for quite some time, and when he did he could not recall what the conversation was about, but he knew "she did not ask me to come back." He was under no obligation to ask her to return. He was not at fault. The party not at fault need not solicit the return of the other,

who has left the home without good cause. It is sufficient if it appears that such party has not refused an unconditional offer to return. We find support for this view in Fagan v. Fagan, supra, 186 Iowa 1279, 173 N.W. 875, and Seeds v. Seeds, 139 Iowa 717, 731, 117 N.W. 1069. We fail to find any such offer here by defendant or rejection by plaintiff, although it is true at one time their attorneys had suggested a reconciliation. It did not appear who had suggested it nor what plaintiff's attitude would have been.

Defendant relies greatly upon the case of McElhaney v. McElhaney, supra, 125 Iowa 333, 334, 101 N.W. 93, 94, where we said: "A husband cannot accept the departure of his wife from the home as a desertion and demand a divorce when he refuses to invite her return, makes no effort to induce her to resume her place in his household, and rejects her overtures for reconciliation. Even though she be originally in fault in leaving him, he cannot shut the door against her return, and then make her continued absence the ground of a charge of desertion as reason for dissolving the marriage tie."

We think here the court did not intend to require the injured party to pursue the deserting spouse, but rather meant when the deserter repented and asked to be taken back, the law required the husband to do so under penalty of loss of the statutory relief provided for desertion if he failed to do so. Such a decision is sound and is undoubtedly the law in this jurisdiction today. There the deserted husband "met her approaches with a rebuff", and this fact justified the relief granted therein. That decision stands for nothing more. Here we have no showing defendant ever asked to return, though for the past fifteen months she has lived within a block of plaintiff and saw him often at a club where both were members. On the contrary, as hereinbefore pointed out, the evidence discloses no desire on her part to return. However, in the McElhaney case, supra, the court in a per curiam opinion said at page 335: "The parties were before the trial court, where their appearance and demeanor toward each other could be observed, and, in view of the record as it comes to this court, we are satisfied that the decree appealed from is right."

This rule is applicable here, for the trial court could from observation of the parties before it more nearly determine the truth and attitude of both plaintiff and defendant when testifying on reasonable cause, possible consent of the parties to live apart, as well as to their attitudes toward a reconciliation. We are satisfied no apparent error appears to void its determination herein.

■ II. The right to alimony for the guilty party is largely discretionary with the court. Dunham v. Dunham, 244 Iowa 214, 56 N.W.2d 606, and cases cited therein; Farrand v. Farrand, 246 Iowa 488, 67 N.W.2d 20; Retman v. Retman, Iowa, 254 N.W. 804; Blain v. Blain, 200 Iowa 910, 205 N.W. 785. In Blain v. Blain, supra, we held that even though the decree be granted as prayed, under certain conditions alimony may be awarded to the guilty party. Also see Barnes v. Barnes, 59 Iowa 456, 13 N.W. 441, and Mitchell v. Mitchell, 193 Iowa 153, 185 N.W. 62.

■ How shall it be fixed? Numerous elements enter into the problem of fixing alimony. The wife's necessities are not alone the criterion, because the husband's ability to pay, as well as other contingencies, must enter into the equation. Fitch v. Fitch, 207 Iowa 1193, 224 N.W. 503; Zuver v. Zuver, 36 Iowa 190; Ensler v. Ensler, 72 Iowa 159, 33 N.W. 384; Evans v. Evans, 159 Iowa 338, 140 N.W. 801; Nelson v. Nelson, 193 Iowa 463, 186 N.W. 904; Black v. Black, 200 Iowa 1016, 205 N.W. 970; Schorr v. Schorr, 206 Iowa 334, 220 N.W. 31.

In Black v. Black, supra, page 1018 of 200 Iowa, page 970 of 205 N.W., we announced the rule now followed in this jurisdiction. We said there: "The court does and should take into consideration the sex, age, health, and future prospects of the parties, the private estate of each, the contributions of each to the joint or accumulated property, the children involved and to be provided for, the earning capacity of each, their respective incomes, and their respective indebtedness. These and other facts pertaining to the case are sufficient to enable a court to arrive at a just, fair, and equitable decision in the matter." Dunham v. Dunham, supra, 244 Iowa 214, 56 N.W.2d 606.

Resultantly, each case must stand upon its own facts. Fitch v. Fitch, supra, 207 Iowa 1193, 224 N.W. 503; Parizek v. Parizek, 210 Iowa 1099, 229 N.W. 689.

█ Here the trial court awarded the defendant $20 per month for two years, and she complains the amount is inadequate in view of the circumstances of the parties. From the record we learn the defendant is now living with her son and drawing a pension of $42.44 per month, and there is evidence of a possible additional amount if proper application is made for it. She stated she could live on $25 to $30 per month. She is in good health and able to work at certain minor tasks. She had received $1900 from the sale of real estate, and her son gave her $500. It is true, we are not told how much of these sums she has now, but we assume she has not disposed of it all. Neither party has any dependents nor indebtedness shown. Plaintiff on the other hand has been ill and unable to work, needs medical and surgical treatment for a hernia and a rupture. He had a gall bladder operation since she left. He has no medical or hospital insurance and, except for his pension, now $120.21 per month, he has no income. His home maintenance expense amounts to $108 per month. The present value of his real property is not shown. He eats one meal per day with his daughter, but otherwise prepares his own meals. His bank balance was shown to be $68.97, and while he did possess some $3000 in government bonds at the time of the marriage, it has been depleted somewhat. No part of his property had been earned or accumulated with defendant's aid. The balance of bond money remaining now, plaintiff said, is made payable jointly to him and his daughter, for only she is now interested in his needs. This marriage lasted only two years. While perhaps plaintiff was somewhat unduly apprehensive as to defendant's designs on his property, we are unable to find substantial fault in plaintiff such as to require extra financial reimbursement to the defendant. It is true he did not aid her to obtain a second pension, but apparently blocked it because she justly was not entitled to receive it. For his honest reply to a questionnaire regarding the pension, we cannot condemn nor penalize him.

While it is true defendant lost one pension of $28.50 per month when she married plaintiff and she testified he told her he would give her the four $500 bonds to replace her pension loss, he denied such an arrangement, declaring all he agreed to

do and did do was to make her a joint payee with him on the bonds, so as to provide for her in the event she survived him and if she remained as his companion and aid. If this was the arrangement, and we think it was, he performed the agreement, and while he repossessed the bonds when he felt insecure, he did not have them changed from her name until she left him. We believe the trial court was reasonably fair and just to defendant in providing an additional $20 per month for two years as alimony and allowing her the sum of $100 for her attorney. While the sum is not large, nor does it reimburse defendant for the loss of her pension funds, any greater sum would amount to a penalty on plaintiff not justified by the record. The judgment should be affirmed.—Affirmed.

All JUSTICES concur.