## CARRIE BRIGGS v. L. L. BRIGGS, Appellant.

**Divorce:** CRUEL TREATMENT. A charge of cruelty, in that defendant had an abortion produced on plaintiff, is not supported in an action for maintenance, by plaintiff's testimony as to her sickness, opinions of physicians that it might have resulted from abortion, though it might have been otherwise caused, where it appears that plaintiff's menses were regular at the time of the alleged abortion; that she frequently stated thereafter that she had not miscarried; and did not claim to have discovered the alleged abortion until after bringing the action,—four years later; and where a witness contradicted plaintiff as to occurrences on that day; and defendant and the physician alleged to have produced the abortion denied all knowledge of it.

DESERTION. Failure of a husband to protest against the action of his wife in leaving him with a statement that she is going on a visit, will not entitle the wife to a divorce against him on the ground of desertion, although he believed she was deserting him when she made such statement.

*Appeal from Chickasaw District Court.*—Hon. A. N. Hobson, Judge.

Thursday, May 20, 1897.

Action by plaintiff for alimony and separate maintenance, and by defendant, in his cross-petition, for a divorce. Decree was entered ordering the defendant to pay plaintiff six hundred and forty dollars, and two hundred and forty dollars annually for maintenance, and an attorney's fee of two hundred dollars, and dismissing the cross-petition. Defendant appeals. Later, plaintiff appealed.—*Reversed.*

*Springer & Clary* for appellant.

*L. Bullis* and *J. H. Powers* for appellee.

Ladd, J.—The plaintiff and defendant were married June 13, 1888. At that time the plaintiff was about twenty-six years old, and the defendant thirty. They lived happily together until May 29, 1889, when plaintiff became sick, and has never recovered. She was under the care of local physicians until the latter part of September, when she was taken to the Woman's Hospital in Chicago for treatment by a specialist. She returned to her home in April following, and remained there till March 4, 1891, when she left defendant, and has since resided with her sister, in Minnesota. In February, 1893, she began this action, basing her claim for alimony and separate maintenance on three grounds: (1) Habitual drunkenness, (2) cruel and inhuman treatment, (3) desertion. The first ground has been abandoned, but the others are insisted on. The defendant, in a cross-petition, asks for a divorce on the ground of desertion.

I.   Has the defendant so inhumanely treated his wife as to endanger her life?   She now claims that her sickness was occasioned by an abortion produced by Dr. Babcock, with the consent and procurement of the defendant.   To sustain this accusation, she relies on the testimony of the woman and her daughter who washed her bedding at the time, and say that it was as bloody as when a miscarriage has taken place; upon her own graphic account of her sickness and suffering; and upon the opinions of physicians that her ailments may have resulted from an abortion.   On the other hand, it appears that her menses were regular and uninterrupted, and that she repeatedly stated during the summer that she did not have a miscarriage.   Dr. Babcock and defendant deny all knowledge of any abortion.   Mrs. Babcock, who was at the house several times a day during this sickness, knew nothing of it.   Belle Miller denies having witnessed the scenes described by plaintiff as having occurred in her presence.   The physicians agree that her disease did not necessarily result from the cause alleged, and there is not a particle of evidence tending to show that defendant or Babcock ever did anything to occasion an abortion.   The plaintiff did not make the discovery until four years had elapsed.   She had left the defendant and begun this suit in the meantime.   The charge is unfounded.

The claim is also made that proper medical aid was not furnished, and that defendant insisted on treatment by Babcock against the plaintiff's wishes. It was only natural that defendant prefer a relative, who was a next-door neighbor, as his family physician. The weight of the evidence, however, shows that no objection was made to him until her return from Chicago, and then, in deference to her wishes, Dr. Wight was called.

It is insisted that defendant treated his wife with indifference and neglect after her return from Chicago. He sent Dr. Babcock there to offer his assistance. on her return home. This she declined, and employed a nurse to accompany her, at considerable expense. Dr. Byford invited Dr. Babcock to be present at the final examination of plaintiff at the hospital, but she told him his presence was not desired. Under such circumstances the greetings of the defendant might not have been as cordial as they should when his wife returned. From this time on her mother took exclusive care of plaintiff. She was irritable, fault-finding, and hysterical, and found nothing in defendant, or what he did, to commend, and everything in his mother, sister, and uncle, as well as himself, to condemn. He undoubtedly relied too much on her mother's care, and failed to show his sick wife many of those attentions and courtesies which are so much in a woman's life. But her treatment of him and his relatives made this inevitable. She suspected him of trying to poison her, and it was only an unfounded suspicion. Her mother had come to be more to her than her husband, and when she left, both went together, voluntarily, and not in fear. Only a few of the many charges have been mentioned, but enough to show that the evidence fails to establish such inhuman treatment as is contemplated by the statute.

II. There is no evidence tending to support the charge of desertion alleged in the petition. The plaintiff admits she left defendant. All arrangements were made for a home in Minnesota before her intended departure was disclosed to her husband. He furnished boxes for packing, and attended to the shipment of the goods. He paid expenses of transportation, but nothing more. He assisted her to the train, and accompanied her as far as Austin, Minn., where she was met by her

brother-in-law, in pursuance of an understanding had before her husband learned she expected to go away. He made no objections to the proposed visit, and no inquiry as to the date of her expected return. The only occurrence which might have led him to suspect her intentions was the shipment of all household goods belonging to her, and part of his own. Even if he did believe she was deserting him, he was not required, under the circumstances disclosed in this case, to protest against her action in so doing. The evidence clearly shows that plaintiff deserted her husband, and he is entitled to a decree of divorce on that ground. The motions filed are without merit, and require no consideration.—REVERSED.