GORDON F. SCHAEFER, appellee, v. NELLY B. SCHAEFER, appellant.

No. 48550.

(Reported in 66 N.W.2d 428)

1344

Clinton E. Shaeffer, of Cedar Rapids, for appellant.

W. L. Fahey and W. G. Cimprich, both of Cedar Rapids, for appellee.

WENNERSTRUM, J.—This appeal has developed by reason of the granting of a decree of divorce to the plaintiff. The defendant has appealed.

Gordon F. Schaefer, the plaintiff, and Nelly B. Schaefer, the defendant, were married at Mount Clemens, Michigan, on December 6, 1941. The plaintiff was then a member of the armed forces, has since continued in the service and has chosen to remain in the army as a career. At the time of the divorce action here under review he had served twenty years in the army. The plaintiff claims the parties to this action lived together as husband and wife until August 1948. At that time they were residing in Storrs, Connecticut, in or near which city the plaintiff was then stationed.

The only ground alleged as a basis for plaintiff's action is the defendant deserted the plaintiff on August 28, 1948, then went to her mother's home in Detroit, Michigan, and has subsequently refused to live with plaintiff as his wife.

During the time the parties resided at Storrs, Connecticut, the plaintiff was then serving in connection with an Army Training Corps at the University of Connecticut. The defendant resided with the plaintiff at Storrs from April 1947 to August 1948. During that period she was employed at the University of Connecticut. While the parties resided in this community they lived in the home of the plaintiff's mother. On or about

August 28, 1948, the defendant went to visit her mother in Detroit for a portion of her vacation. In her testimony in the present case she stated at that time she intended to return to her home in Storrs and to resume her employment there. She testified that two or three days after her arrival in Detroit her husband came to her mother's home and told her she should return with him immediately or there would not be a home to which she could return. Her further testimony is that she stated she would return when her vacation was over. It is disclosed by the record the husband then left the defendant in Detroit but returned some three days later and stated to the defendant that he had gone to Connecticut to get her clothes and return them to her. The next occasion when the parties met was in December of 1948 when the plaintiff again came to Detroit. The occasion for this visit was that he came for their wedding anniversary. The defendant states it was then decided she was to return to Storrs, Connecticut, if plaintiff was able to find a home where they might live. Subsequently thereto the plaintiff telephoned the defendant on several occasions and one time advised her he would be able to obtain a four-room home. She advised plaintiff this was not large enough for them inasmuch as they needed two bedrooms. The defendant has a minor son by a previous marriage who lives with her. The record also discloses the plaintiff phoned the defendant concerning a five-room home but she informed him she was fearful that her son might be injured because the home was located on a hill and she would not approve the obtaining of this property. These telephone conversations are corroborated by the plaintiff's mother who heard at least one portion of the conversation and perhaps overheard a part of the statements made by the wife. It is shown that these telephone conversations continued infrequently through 1949. Thereafter there were no subsequent communications between the parties. The defendant in her testimony admits she received several telephone messages relative to a proposed home at Storrs, Connecticut.

The defendant next learned of the location of the plaintiff when she was served with a divorce action which he had commenced in Florida. This notice was apparently received early

in the year of 1951. There are no definite facts disclosed in the record relative to what disposition was made of this divorce action. It is also shown that a further notice of another divorce proceeding in Florida was received by the defendant in April 1951. The only facts relative to these actions in Florida are disclosed by the testimony of the defendant, who testified in the present action the plaintiff dismissed them after she had interposed an answer and resistance to each of them.

In July 1951 the plaintiff moved to Cedar Rapids, Iowa, by reason of being assigned to a military unit at Coe College. It is shown that the plaintiff registered to vote in Cedar Rapids, Linn County, on May 22, 1952, and that he opened a bank account in that city in September 1951. He has been a member of the American Legion Post in Cedar Rapids since July 1952. It is also shown that on occasions when he was not required to be of service in connection with his military duties he was employed by the Collins Radio Company of Cedar Rapids.

Inasmuch as the important phase of this case is whether the defendant deserted the plaintiff, a limited summarization of her testimony is of importance. It is shown that she first secured employment in Detroit in October of 1948 and has worked there continuously. In December of that year and in January of 1949 her husband made three trips to Detroit from Storrs, Connecticut—a round-trip distance of approximately 1600 miles. Relative to these trips she testified: "A. The first visit he came to make a reconciliation with me. Q. And you didn't go back with him, did you? A. We were reconciled."

It is further shown that he made a later trip which she states was for the purpose of having her sign over an interest the defendant had in an automobile. However, it is shown that the plaintiff left the car with her and she sold it in 1951 for the purpose, as she states, of taking care of certain financial responsibilities. She received $900 for the car and used this sum in payment of her mother's doctor bills. Her mother died subsequent to defendant's return to Detroit in 1948. It is also shown the defendant has received as an army allotment from plaintiff the sum of $157.10 per month. For reasons not shown in the record these allotments were apparently discontinued for a time but later she received all the back compensation due

her in the total amount of $1180. During a portion, if not all, of her employment in Detroit she has received as her compensation the sum of slightly less than $60 per week. It is also shown that at the time of the divorce action she had $3000 in her own savings and checking account and in a credit union. In connection with the defendant's testimony relative to the plaintiff's previous trips to Cedar Rapids she testified: "Q. You were here at the other hearing? A. Yes sir. Q. Did you make any attempt to go to his home? A. No sir. Q. Do you know where it was? A. No sir. Q. How long were you here? A. About 48 hours. Q. You never communicated with him? A. No sir. Q. You made no inquiries at all? A. No sir. Q. You went back to Detroit? A. Yes sir. Q. You still want the Court to feel if he had a proper home you would live with him? A. Yes sir. Q. You don't know what kind of home he had here? A. I heard he had a trailer home. Q. And you knew from the evidence in the case that he was living in a trailer home? A. Yes sir. Q. And you heard the evidence as to where the trailer home was located? A. Yes sir. Q. But you didn't investigate the home? A. No sir. Q. Made no difference to you what type it was, you didn't have any thought of living in it, is that true? * * * A. A house trailer is not a dwelling unit. * * * A. Yes. Q. In other words, you mean the answer is 'yes' you don't have any thought? A. Yes, I had no intention of living in a trailer. * * * Q. You never did come to Storrs and look at a home, did you? A. No sir. Q. After that conversation that you had about the houses you never contacted your husband again? A. No sir * * * Q. It didn't take you long to run him down then when you didn't get your check? A. I contacted the Red Cross. Q. You didn't care where your husband was, it was to get this money, isn't that true? A. That is right. Q. I see. Now, Mrs. Schaefer, do you own any real estate in Detroit? A. Yes sir. Q. What type of property do you own? A. A private dwelling. Q. And what is the valuation of that piece of real estate? A. It is assessed by the Real Estate Department as $4600. * * * Q. Now, you got this through your mother's estate? A. Yes sir. * * * Q. Now, you were here in Cedar Rapids in September of '53, weren't you? A. Yes sir. Q. You made no attempt to have a reconciliation with him then, did you? A. No sir. Q. You

didn't even talk with him, did you? A. No sir. Q. Didn't have nothing to do with him? A. No sir. Q. Still you want the Court to believe you would come back and live with him, is that what you want the Court to believe? A. Yes sir. Q. But you have made no attempt to do it? A. No sir. Q. Now, you testified on direct the reason you didn't go back was there was no rooms in your husband's mother's home? A. Yes sir. Q. And what rooms had you occupied previous to your leaving it and going to Detroit? A. My husband and I shared one room, and my son had another room to himself. Q. Was that the son by the other marriage? A. Yes sir."

The trial court found there was no evidence defendant and plaintiff's widowed mother did not get along during the time the couple lived in her home or that the mother was unwilling to have them live with her while the plaintiff was assigned to a military unit at the University of Connecticut. It was further held there was no evidence the home of the plaintiff's mother was inadequate or unsuitable for defendant, her son, and her husband. The court held as a matter of law the defendant was arbitrary in her position relative to the obtaining of a home and that her absenting herself from her husband for more than two years was willful and was without probable cause under the circumstances. It further held the court was justified in granting to the plaintiff a decree of divorce. In the decree it was provided he should pay her alimony for a period of six months in the amount of $50 per month, beginning with October 1, 1953, and that he should pay the costs of this action.

I. Prior to the trial of this case on its merits there was submitted to the trial court an application by defendant for a separate hearing on points of law. It was therein alleged there had been set out in defendant's answer that plaintiff had commenced a divorce action in Bradford County, Florida, alleging the same grounds for divorce as pleaded in the instant case. It was further stated that when the defendant filed a resistance to the first Florida action the plaintiff dismissed it. The defendant also alleged that the plaintiff, in April 1951 in Florida, began another divorce action and again alleged the same grounds and thereafter voluntarily dismissed that action when defendant filed a resistance. She further alleged that on December 15, 1951,

the plaintiff started a third divorce action in Linn County, Iowa, and therein based his cause of action on the ground of desertion as set forth in this present action. When a resistance was filed thereto by the defendant it was voluntarily dismissed by the plaintiff on January 28, 1952. It is further alleged in the application for ruling on points of law that, as shown in a paragraph in her present answer, the plaintiff on July 23, 1952, started a fourth divorce action on the same grounds relative to desertion which had been incorporated in his previous suits and that after a hearing the action was dismissed by the Linn County Court. In the application for ruling on points of law the defendant contended that because of the provisions of rule 215, R.C.P., one or both of the last two dismissals operated as an adjudication against the plaintiff on the merits.

The defendant asserts as one of her grounds for reversal the court erred in holding there had been no adjudication of the cause on its merits despite the provisions of rule 215, R.C.P. The trial court held there was no evidence introduced at the hearing on what grounds and for what reason the Florida cases were dismissed. Section 622.53, 1950 (1954) Code of Iowa, sets out the manner in which judicial records of another state may be proved. There is nothing in the record pertaining to the application for a ruling on points of law which shows the manner or the disposition of the Florida actions.

In the court's ruling on the motion it stated in the first divorce suit brought in Linn County the defendant entered a special appearance in which she questioned the jurisdiction of the court on the grounds: (1) that plaintiff had not been a resident of Iowa for one year; (2) that the Florida divorce action was still pending. It is shown that on January 28, 1952, the plaintiff filed a written dismissal without prejudice and the court entered an order dismissing the case without prejudice at plaintiff's cost. It held in its ruling on the motion this dismissal did not operate as an adjudication against the plaintiff on the merits of the cause.

It further held that in the second Linn County divorce action one of the issues was whether the plaintiff had acquired a year's residence prior to the institution of this second action and that in its decision on this point the court in the former

hearing had held the plaintiff had not proven his one-year residence and the court therefore dismissed plaintiff's cause of action at his cost. The court held, in its ruling on application for hearing on points of law, this last dismissal was not a dismissal by the plaintiff but was by the court because the court had no jurisdiction. And it further held that it was not an adjudication of the merits but was a dismissal for want of jurisdiction.

The court in its final holding ruled there had been no prior evidence of adjudications on the merits in the several causes and the plaintiff had a right to proceed with the present action.

Rule 215, R.C.P., which pertains to voluntary dismissals, is in part as follows: "A dismissal under this rule shall be without prejudice, unless otherwise stated; *but if made by any party who has previously dismissed an action against the same defendant*, in any court of any state or of the United States, including or *based on the same cause, such dismissal shall* operate as an adjudication against him on the merits, unless otherwise ordered by the court, in the interests of justice." (Italics supplied.)

 It is apparent that the dismissal of the second Linn County action by the court was not such a dismissal as is contemplated by the portion of the rule just quoted. Although this was a second dismissal, it was by the court and not by the plaintiff. It is when there is a second dismissal by a party to an action that the rule has application. Consequently the trial court was correct in holding that the ruling of dismissal by the court did not constitute an adjudication on the merits.

██ In connection with the ruling mentioned in this division and the court's ruling on the merits of the case attention is called to the case of Harris v. Harris, 205 Iowa 108, 215 N.W. 661, where we commented on the place of residence of a person in military service. See also 27 C. J. S., Divorce, section 76, pages 648, 649; annotations, 21 A. L. R.2d 1172, 1181. As found by the trial court, plaintiff has shown his intention to make his home in Cedar Rapids and for sufficient time to give jurisdiction to the district court. None of the time spent here in question was in an army reservation but in Linn County and he consequently could attain a residence there if he evidenced an inten-

tion to do so. This he has sufficiently shown, as found by the trial court in its ruling on the case generally.

■ II. The trial court prior to the hearing of the present case overruled a motion by the defendant for allowance of travel expenses to attend the trial of the present case. The defendant assigns this ruling as one of her grounds for reversal. Under section 598.11, 1950 (1954) Code, the court is authorized to order payments to a litigant in a divorce action: "* * * to enable such party to prosecute or defend the action." We have held that allowance of suit money to a wife who is a defendant in a divorce action rests in the discretion of the trial court. Main v. Main, 168 Iowa 353, 150 N.W. 590; Eastman v. Eastman, 159 Iowa 167, 140 N.W. 400.

■ It is shown in the resistance filed to this motion that the defendant was then receiving approximately $157 per month as an allotment from the plaintiff's military pay. We find no abuse of legal discretion on the part of the trial court in over-ruling defendant's motion.

■ III. As further grounds for reversal the defendant asserts that the trial court erred in its refusal to dismiss plaintiff's action on the ground that the plaintiff failed to introduce sufficient evidence to prove the allegations of his petition, that there was not sufficient evidence presented to corroborate the testimony of the plaintiff, and that there was not sufficient evidence introduced to substantiate the charge of desertion.

We hold there was sufficient evidence of corroboration of plaintiff's testimony relative to the defendant's refusal to return to Storrs, Connecticut, and make a home there with plaintiff. This is shown by the testimony of plaintiff's mother. If it might be said the mother's testimony is insufficient, further corroboration is supplied by the statements of the defendant as shown by her testimony heretofore noted. Corroboration may be shown from defendant's own testimony. Lamp v. Lamp, 245 Iowa 52, 58, 60 N.W.2d 844, 848, and cases and authorities therein cited.

■ Desertion, as a ground for divorce, must have been without reasonable cause and must have existed for two years prior to the institution of the action. Section 598.8(2), 1950 (1954) Code, Carr v. Carr, 212 Iowa 1130, 237 N.W. 492. We have also held there must be a wrongful intent to desert which has con-

tinued for the statutory period. Tipton v. Tipton, 169 Iowa 182, 185, 151 N.W. 90, Ann. Cas. 1916C 360. And in Parker v. Parker, 244 Iowa 159, 162, 55 N.W.2d 183, 185, we summarized the elements necessary for a divorce on the grounds of desertion to be: "(1) Intent to desert (2) cessation of the marriage relation (3) continuance of the intent and the cessation for the statutory period, and (4) absence of reasonable cause."

 It is apparent from a review of the evidence there was an intent on the part of the defendant to desert the plaintiff. Her own testimony substantiates this fact when she stated in substance she did not care where her husband was as it was her desire to get the allotment money. Her own testimony amply discloses all the factors heretofore noted as necessary to constitute desertion.

There may have been acts on the part of the plaintiff which are not particularly commendable. However, these facts do not take away the effect of the defendant's actions in connection with her very evident desertion of the plaintiff. The defendant has apparently failed to realize that marriage is a partnership and that she has a duty to endeavor to preserve this relationship. This she failed to do. Mitchell v. Mitchell, 193 Iowa 153, 157, 185 N.W. 62.

The trial court was right in its rulings and final decision granting a divorce and we consequently affirm.—Affirmed.

All JUSTICES concur.