CARL A. BUNGER, appellant, v. DORIS GATES BUNGER, appellee.

No. 49428.

(Reported in 90 N.W.2d 1)

MAY 6, 1958.

Kennedy, Kepford, Kelsen & Balch, of Waterloo, for appellant.

Harris, Van Metre & Buckmaster, of Waterloo, for appellee.

PETERSON, C. J.—This is a divorce action. The parties were married at Waterloo on September 26, 1951. Plaintiff was forty-one. Defendant was in her thirties. It was the first marriage for both parties. The parties first lived for a short time with plaintiff's mother in her home. She had built a new house for them at cost of $14,000, a short distance from her home. Shortly after marriage they moved into this new home. On November 6, 1951, plaintiff and his mother drove to the country to take care of some farm matters, leaving about five o'clock and returning about nine o'clock. When plaintiff returned he found defendant had loaded up all the furniture she had brought to the home and all her personal effects and left. He later discovered she had moved to the home of her mother at Jesup. She never returned. The action now before this court was filed November 5, 1954, three years after defendant left, alleging inhuman treatment. On March 28, 1956, an amended and substituted petition was filed seeking divorce on ground of desertion. The case was tried March 28, 1957, on that basis alone. The trial court dismissed plaintiff's petition, and he has appealed.

Appellant alleges two specific errors by the trial court as basis for reversal. 1. In finding appellant failed to prove appellee willfully deserted him. 2. In finding appellant failed to prove appellee's absence from the marital abode was without reasonable cause or without appellant's consent.

The statutory provisions with reference to divorce applicable to this case appear in section 598.8(2) Iowa Code 1958: "Divorces from the bonds of matrimony may be decreed against the husband for the following causes: * * * 2. When he willfully deserts his wife and absents himself without a reasonable cause for the space of two years." And section 598.9: "* * * The husband may obtain a divorce from the wife for like cause * * *."

While the facts of every divorce case are different there are certain principles involved which are similar. This is especially true of desertion cases. We will present and analyze such principles hereinafter. A long line of cases, from our early judicial history until recently, supports our conclusion as to the case at bar. Pilgrim v. Pilgrim, 57 Iowa 370, 10 N.W. 750; Lane v.

Lane, 67 Iowa 76, 24 N.W. 601; Taylor v. Taylor, 80 Iowa 29, 45 N.W. 307, 20 Am. St. Rep. 394; Briggs v. Briggs, 102 Iowa 318, 71 N.W. 198; Seeds v. Seeds, 139 Iowa 717, 117 N.W. 1069; Coffin v. Coffin, 155 Iowa 574, 136 N.W. 539; Tipton v. Tipton, 169 Iowa 182, 151 N.W. 90, Ann. Cas. 1916C 360; Mitchell v. Mitchell, 193 Iowa 153, 185 N.W. 62; Depping v. Depping, 206 Iowa 1203, 219 N.W. 416; Parker v. Parker, 244 Iowa 159, 55 N.W.2d 183; Schaefer v. Schaefer, 245 Iowa 1343, 66 N.W.2d 428; Nelson v. Nelson, 246 Iowa 760, 68 N.W.2d 746.

We have often held the mere fact of living apart is not sufficient to establish a basis for divorce on the ground of desertion. Carr v. Carr, 212 Iowa 1130, 237 N.W. 492; Paulsen v. Paulsen, 243 Iowa 51, 50 N.W. 2d 567.

In the early case of Kupka v. Kupka, 132 Iowa 191, 109 N.W. 610, we established the four elements essential to divorce because of desertion: 1. The cessation of the marriage relation. 2. The intent to desert. 3. The continuation of the desertion during the statutory period. 4. The absence of consent or misconduct of the deserted party. We reaffirmed these elements in the recent cases of Parker v. Parker; Schaefer v. Schaefer; and Nelson v. Nelson, all supra, with a slight change of wording in the fourth element.

There is no necessity for discussion as to elements 1 and 2. As to the element of cessation of the marriage relation there is no conflict in the testimony. It ceased on November 6, 1951, when she left and was never resumed during the five and one-half years between that date and the date of trial. As to second element defendant took all the furniture and personal effects she had brought to the home, in plaintiff's absence, and moved to the home of her mother at Jesup, about twenty miles from Waterloo. This was sufficient evidence of an initial intent to desert. It is on the basis of the third and fourth elements that the trial court denied plaintiff a divorce. These merit our attention.

I. Appellee alleges there was no intent on her part to desert appellant for the statutory two-year period. She testified she called plaintiff by telephone on the day following her removal from the home. There is some conflict between plaintiff and defendant as to the conversation. It was brief and we will quote it. Plaintiff testified: "She said 'I still love you.' I said, 'Doris,

942

what made you do that?' She said, 'It is the best way out, the best way out,' and hung up." Defendant testified: "* * * I said 'You know I love you,' and said 'When I can have yours I will be with you' and he said 'We will see about that'."

Thereafter advances made by defendant were that she invited him to dinner on his birthday in January after she left. He did not accept. She called him by telephone, although the record is not clear as to how often. Her testimony is that it was "more than once." She sent him cards at holiday time and she wrote him some letters. The testimony is not clear as to how many times she wrote him, but the trend of the evidence is that it was not often. He returned the letters unread. Defendant did not enlighten the trial court as to what was in the letters. She never offered them in evidence. She only saw plaintiff twice during the five and one-half-year period. She read in the paper he had an operation so she went to the hospital to see him. However, he was in a coma and there was no conversation. She met him once in his lawyer's office with her lawyer present. She said in the conversation that she did not want a divorce, but also said there was not much discussion because "He [plaintiff] did not seem to be in the mood."

The question of intent had careful consideration in Parker v. Parker, supra. We made a statement (page 161 of 244 Iowa) in the decision in that case which is important and pertinent in this case. We quote: "When plaintiff's petition for divorce was dismissed in 1944 the defendant advised her that 'so far as Mr. Parker and I were concerned, the court had upheld him so that was the end—I could take care of myself.' This is testified to by plaintiff and is not denied by defendant, except that *he says he at no time had any intention of deserting his wife. The old copybook maxim, however, says 'actions speak louder than words.' We think it is sound, and it is applicable here.*" (Emphasis ours.)

We defined "intent" in Hagerty v. Hagerty, 186 Iowa 1329, 1334, 172 N.W. 259, 260, as follows: " 'Intent is an act or emotion of the mind, seldom, if ever, capable of direct or positive proof, but is arrived at by such just and reasonable deductions from the acts and facts proven as the guarded judgment of a reasonably prudent and cautious man would ordinarily draw therefrom.' "

There are actions of defendant in this case which negative her protestations of "no intent" to desert plaintiff. We will list them:

1. The parties were in middle life. They were not irresponsible teenagers. However, she only stayed with plaintiff and in their new home forty days. She did not give the marriage a fair chance to succeed. The very fact of this short period of marital relationship is evidence of an intention of leaving plaintiff and going home to mother to stay, which she did.

2. There must have been a feeling of guilt as to what she was doing. She did not face plaintiff and tell him she was leaving him. Plaintiff and his mother were in the greenhouse business located on the same premises with the mother's home and the new home of the parties. On the afternoon of November 6 she came to the greenhouse about 1:30 and told plaintiff her mother and aunt had come over from Jesup and were going shopping that afternoon and she was going along. Plaintiff testified, which is not contradicted: "I told her to go ahead and asked her 'Is there anything that you need for groceries' and she said only a case of canned milk and I said 'Mother has some' and she waved her hand and smiled and that was the last I seen of her." He went with his mother to the country in connection with some farm business and was gone about four hours and when he came back she had moved out "bag and baggage," as the expression goes. In other words, she left surreptitiously which was action on her part of intent to desert.

3. She took all the furniture she had brought to the home and all her personal effects. This is evidence of permanency as to desertion. If her protestations as to a desire to continue the marital relationship were genuine she would at least have left the family household goods in the home. If she had some complaint and desired to go home to her mother, but also had the overwhelming desire to remain as his wife for which she so strenuously contended thereafter, she could have taken her personal effects and left the household goods as an evidence of her good faith concerning return to the home.

4. She continued to live from November 6, 1951, when she left, to March 28, 1957, when the case was tried, in the immediate area of the family home. During all that time she never

returned to the home. If she was sincere about re-establishing the family home, the logical procedure after she had given the matter of leaving some serious thought would be to come back to the home and discuss the situation with plaintiff and personally express to him, face to face, her desire to come back and re-establish the home.

5. She testified she went home to her mother at Jesup. She also testified that her mother died sometime after she returned to the home, but even then, when she apparently was all alone in her mother's home, she failed to return to her own home.

6. The evidence would indicate that these two people in middle life were very fortunate as a newly married couple. Plaintiff's mother had built for them a new home costing $14,000 and presented it to the newlyweds. We will discuss her alleged cause for leaving in a later division, but it is very strange procedure for a woman married only forty days to pack up and leave a nice new modern home and never return unless she had an intention to continue her desertion of plaintiff.

7. It is very significant that defendant did not offer in evidence the letters she had written plaintiff, and which he returned to her. If in the letters she made offers of return to the home, and made explanation as to her cause for leaving, they could be of great value to the trial court, and now to this court, as an evidence of her intention to remain his wife. The burden of this failure rests upon her shoulders.

8. Her contention as to a continuation of intent to desert rests solely on a few isolated telephone calls, a few letters, a few cards at holidays, and her statement she would return when plaintiff "returned her love." In the face of the circumstances as above outlined "these words" are not sufficient as against her "actions."

Appellee cites and relies on four cases as to this question. Parker v. Parker; Carr v. Carr; Tipton v. Tipton; and Kupka v. Kupka, all supra.

In Parker v. Parker, supra, plaintiff sued her husband, and secured divorce, on ground of desertion. He defended on basis of no intent to desert nor continuance of desertion for statutory period. Their home was in Fairfield. As far as living together,

or as to marital relations, they had been separated for several years. When in town he lived in the basement of the home where plaintiff lived with her daughter. We said (page 163 of 244 Iowa) : "But for about three years prior to the bringing of this action he limited his visits to two or three each year and was at such times present for a very few days only. He made no contribution to the support of his wife except he sent her a few boxes of candy. * * * It seems apparent he had in fact abandoned his family and left them entirely to their own resources." This case does not support the claims of appellee. It supports appellant's position.

In Carr v. Carr, supra, Mrs. Carr had been committed to the State Mental Hospital. When she was released the parties took a trip together to Illinois, where by agreement she remained in the home of her brother-in-law. The parties never resumed marital relations. We held the situation was one of mere separation by common consent.

In Tipton v. Tipton, supra, there is no support for appellee. The wife sued for divorce on ground of desertion. Defendant filed cross-petition asserting the same claim. The parties were married, but never lived together. Trial court dismissed both actions. *We reversed,* granting divorce to wife, and said (page 185 of 169 Iowa) : "This [desertion], however, means merely that desertion must be intentional. 'The act is willful when there is a design to forsake the other spouse wrongfully, or *without cause,* and thereby break up the marital union'; deliberate intent to cease living with the other as spouse * * *." (Emphasis ours.)

Kupka v. Kupka, supra, is the case in which the four elements as to desertion were established, as heretofore quoted. The husband sued the wife. She was sick, and he took her to the train to go to her parents' home, and to secure medical aid at Iowa City. She offered to return *unconditionally* and plaintiff declared he did not want her. He told her sister : " 'I don't care for Annie any more.' " He sold all the family household goods at public auction. The case was properly dismissed, and it is evident the factual situation is different from this case.

II. Another element of desertion is the absence of reasonable cause for defendant to leave plaintiff. If she has good, sufficient

and reasonable cause for leaving plaintiff the basis for his action on the ground of desertion would be destroyed and we need proceed no further to sustain the trial court in dismissal of plaintiff's petition. On the other hand, if there is absence of reasonable cause the foundation is laid for consideration of the other elements. According to defendant's testimony there was no mistreatment by plaintiff which would constitute a reasonable cause for leaving. She testified: "Mr. Bunger never struck me nor was cruel to me, nor did he ever curse me or swear at me, but on November 5th or 6th I left there voluntarily. I did not tell Mr. Bunger that I was going to leave on that date."

The only cause for leaving mentioned by defendant at any time was contained in the statement she made to plaintiff in the telephone conversation on the day after she left: "* * * I said 'you know I love you', and said 'when I can have yours I will be with you.' " The statement in her evidence at the trial five and one-half years later was: "Q. Did you go into detail as to what you wanted changed? A. I merely said when I could have his love. Q. Does that condition remain the same at the present time? A. Yes."

█ Love is an emotion evidenced by words and acts. Sometimes acts are more important than words. In order to establish its presence or absence a factual statement of some type is necessary. Without such statement, defendant's charge that plaintiff did not "return her love" is meaningless. It might properly be said the use of the word "love" alone is in the nature of a conclusion. The basic acts establishing love are kindness, consideration, understanding, patience, sacrifice or sufferance, if necessary, and certain words and physical acts and demonstrations which constitute evidence of affection between the persons involved.

█ Defendant's testimony as to her cause for leaving was therefore only a statement in the nature of a conclusion. She gave no explanations, details nor specifications. Defendant has left the trial court and this court completely in the dark as to what the condition was when she testified she would return when she could have his love. We cannot accept such conclusion unsupported by facts as reasonable cause for leaving. On such a vital point, we are not justified in speculating as to what de-

fendant meant. The parties had known each other for ten years, had a period of courtship of one year, and yet only after forty days of marriage, she blandly brushes it aside with the conclusion that plaintiff did not return her love. There is not a word of enlightenment as to the manner in which she claims plaintiff had failed. When defendant left secretly and without reasonable explanation, the obligation shifted to her to show cause therefor, as a basis for defeat of an action, based on desertion.

In connection with reasonable cause on the part of defendant for leaving her home her counsel vigorously urge two other matters which only appear incidentally in the testimony. One was an undue domination of the home by plaintiff's mother. She lived in the old Bunger homestead where plaintiff was born and had lived all his life before marriage. It was located on the greenhouse area acreage. These are the same premises on which plaintiff's mother built the new residence for plaintiff and defendant before they were married. One significant situation in connection with this claim is that defendant made no mention of the matter in any part of her testimony. The only place it appears in the record is in the cross-examination of plaintiff. Defendant's attorney asked him if his wife had complained about his mother's interference in their affairs. Plaintiff testified:

"Q. Isn't it a fact, Mr. Bunger, that at this conference between Judge Evans and myself and Mrs. Bunger and you that Mrs. Bunger stated to you that there was no reason why you couldn't get along as married people if your mother did not interfere? A. Mother did not interfere. * * * Q. You indicated you thought your wife was the fault rather than your mother? A. Right. * * * Q. That your mother is right and your wife is wrong? A. Mother didn't have anything to do with it. She didn't interfere. She thinks mother interfered but she didn't. She made things pleasant—even bought a $14,000 home for us and everything. Q. She picked out a lot of things in the house for you? * * * A. No, not a thing. She didn't—Doris didn't even want to move over there. She wanted to stay in our old home."

The facts negative any undue domination by plaintiff's mother. If she intended to do so, she would have kept them

in her home. On the contrary she built and presented to them a new home, where they could live their own and separate lives. In the absence of any specific statement by defendant as to nature of interference by plaintiff's mother the allegation has no basis as a reasonable cause.

Another matter which appears incidentally in the record, and which is also urged by appellee's counsel as a cause for her leaving, is the statement made by defendant that on two different occasions, during the forty days, plaintiff asked her to go home to Jesup. This was never mentioned when she telephoned him the day after she left, nor in the conference in the attorney's office after the divorce case had been started. Plaintiff categorically denied the charge. He testified on cross-examination: "Q. * * * I will ask you if it is not true that on more than one occasion prior to her leaving you stated to her you two could not live together any longer? A. I did not say that." Since this had not made sufficient impression on defendant for her to mention it, and in view of denial by plaintiff, it does not form sufficient basis for reasonable cause.

As to question of adequate cause for leaving her home appellee relies on Arment v. Arment, 154 Iowa 573, 580, 581, 134 N.W. 616, 619, and Tallmon v. Tallmon, 166 Iowa 370, 373, 377, 147 N.W. 746.

Arment v. Arment, supra, announces principles supporting appellant rather than appellee. This is shown by following quotations from the decision: "On the whole record, we reach the conclusion that the defendant compelled the plaintiff to leave him in November, 1907, and that, in pursuance of such determination on his part, he took her to Tama and left her with her mother. There was no reasonable cause for such action on the part of the defendant. * * * The defendant at that time deserted the plaintiff, and, unless the statutory period of desertion was interrupted by good-faith endeavor on his part to have her return, free from improper qualifications and conditions, she is entitled to a divorce on the ground of desertion. * * * And such good-faith action on his part must be entirely free from improper qualifications and conditions. * * * In our judgment, the qualifications and conditions thus imposed were improper, and were

rightly rejected by the plaintiff." A divorce was granted to plaintiff on ground of desertion.

In Tallmon v. Tallmon, supra, there is no comparison between what appellee claims against appellant as a cause for leaving, and the actions of Mr. Tallmon against his wife. It was the second marriage for both. The marriage was the result of an advertisement. Defendant had ten children, and he in fact took the wife into the home on the basis of a servant. A detailed statement of fact is unnecessary. Suffice to say the long list of inhuman actions by defendant's children, either approved or at least not stopped by defendant, is almost unbelievable in human relationships. The conclusion of the court was: "Under the evidence, we think there can be no serious question but that defendant, from the day after the marriage, desired to rid himself of the plaintiff, and that the tendency of the conduct of himself and his children was to force her to leave. * * * After considering all the evidence, it is our conclusion that the defendant and his children, with his knowledge and consent, so treated plaintiff as to force her to leave, if indeed that was not the purpose. She did leave because of it. She came back in October and sought a reconciliation, which was refused by the defendant. He was guilty of desertion."

III. The basis of the trial court's dismissal of plaintiff's petition was threefold: no willful desertion by defendant; reasonable cause to leave; and consent as to absence by plaintiff. We have heretofore considered the first two, and will now give consideration to the third. As to the question of plaintiff taking defendant back during the first two years after her desertion, he testified that after the first two weeks of absence he lost his "soft feeling for her." He said she had broken his heart; that he lost twenty pounds, and did not want to think about it. For whatever it may be worth, in answer to a question on redirect examination his testimony was: "Q. Have you ever told her you would not take her back? A. I did not. I didn't talk to her."

In deciding this phase of the case we must examine the method of desertion. If defendant had gone home to Mama with a bag and a few clothes, indicating a temporary situation, it is proper to contend plaintiff should have remained in a receptive mood for at least a reasonable length of time. But when she

removed not only her personal effects but all her furniture, a reasonably minded person had a right to attach a condition of permanency to her acts.

There was justification for plaintiff's attitude of indifference to her return after waiting for only a short length of time. We considered a similar situation in Nelson v. Nelson, supra, from another angle. The same contention was made by Mrs. Nelson, and we said (pages 766, 767 of 246 Iowa): "He [Mr. Nelson] was under no obligation to ask her to return. He was not at fault. *The party not at fault need not solicit the return of the other, who has left the home without good cause.* It is sufficient if it appears that such party has not refused an *unconditional* offer to return."

There is not one word in the record in this case that defendant ever offered to return unconditionally. In her one telephone conversation and in the conference in the lawyer's office and in her testimony in court she at all times attached an unexplained, and, as far as the evidence shows, an unwarranted condition to her offer to return.

In support of her contention that plaintiff consented to or approved defendant's absence, appellee cites four cases. Nelson v. Nelson, and Tipton v. Tipton, both supra, which we have already considered. McElhaney v. McElhaney, 125 Iowa 333, 101 N.W. 93, and Day v. Day, 84 Iowa 221, 50 N.W. 979.

McElhaney v. McElhaney, supra, is a very brief Per Curiam opinion with no detailed statement of facts. We distinguished the case in Nelson v. Nelson, supra, which is similar to this case, stating at page 767 of 246 Iowa: "We think here the court did not intend to require the injured party to pursue the deserting spouse, but rather meant when the deserter repented and asked to be taken back, the law required the husband to do so under penalty of loss of the statutory relief provided for desertion if he failed to do so. Such a decision is sound and is undoubtedly the law in this jurisdiction today. There the deserted husband 'met her approaches with a rebuff', * * *."

In the instant case appellee never repented and asked appellant to take her back. Suggestion for return by her was always conditional on an alleged baseless cause, never explained nor proven.

As to Day v. Day, supra, the facts are not comparable to the facts in this case. This appears from the following quotation without further comment: "It seems that, a day or two after she left, plaintiff went to see her, and tried to induce her to return; and the record discloses the fact that he sought to make her return conditional on her in some manner releasing all claim to any interest in his real estate. * * * That such was his proposition the testimony clearly shows. The price which plaintiff exacted for the defendant's return shows his offer was not made in good faith. * * * The exaction was one plaintiff had no right to make, and he could not, we think, claim thereafter that she had deserted him, even though she was guilty of desertion in leaving him in the first instance." (Page 226 of 84 Iowa.)

Plaintiff's petition on ground of desertion was dismissed, and defendant granted a divorce on basis of inhuman treatment.

IV. In our early judicial history we held in two cases as to the matter of reasonable cause, that cause must be such as would justify a divorce in favor of the party leaving. Pierce v. Pierce, 33 Iowa 238, 240; Lane v. Lane, 67 Iowa 76, 24 N.W. 601. We have modified this strict rule in Tipton v. Tipton; Schaefer v. Schaefer; and Nelson v. Nelson, all supra. However, the statutory provision of "reasonable cause" must be respected. The cause must be definite, substantial and such that reasonable minds would conclude that the marriage was a failure, and the departure of the spouse was not a mere passing fancy, nor a flimsy or baseless excuse. Defendant's alleged reason for leaving, without definition and specification as to plaintiff's lack of love, falls far short of a reasonable cause.

V. We will not review all the cases we have cited supporting our decision. We will, however, briefly review an early case and three recent cases.

Taylor v. Taylor, supra, was decided in 1890. There are some significant similarities between that case and the instant case. We quote (pages 29, 30 of 80 Iowa): "Defendant was married to plaintiff on the fifteenth day of September, 1886, and on the eighth day of April, 1887, left him. The evidence shows without conflict that the desertion was wilful, and without any cause recognized in law. It had continued more than two years, when this action was commenced. She made no complaint

of plaintiff, excepting that to one witness she stated that 'she did not think the plaintiff loved her.' Another witness testified that 'there seemed to be no affection between them.' However much the *want of affection* between the parties is to be deplored, it is not in law recognized as a *sufficient ground for* desertion." (Emphasis ours.)

We have heretofore quoted from and considered Parker v. Parker, supra. Defendant protested he had no intention of deserting plaintiff and for three years he came back to the Parker home in Fairfield two or three times a year for a few days and stayed in the basement. We held that by his actions he had in fact abandoned and deserted his wife.

In Schaefer v. Schaefer, supra, plaintiff was in the Army and in 1951 was assigned to the military unit at Coe College in Cedar Rapids. Defendant stayed in Detroit with her mother. She contended she had no intention of deserting plaintiff. She testified: "Q. You still want the Court to feel if he had a proper home you would live with him? A. Yes sir." For more than two years she made no attempt to come and live with plaintiff. We held she was guilty of desertion.

We have previously quoted from and referred to Nelson v. Nelson, supra. The parties were elderly people who had both been married previously. They apparently lived happily together during the first year of marriage. Thereafter their mutual confidences appeared to dissipate. We said (page 762 of 246 Iowa) : "As a result of an incident involving possession of some government bonds, defendant gathered up her possessions, left the family home on the 14th of October, 1950, and did not return." Three years later plaintiff filed action for divorce on the ground of desertion. Defendant lived in the same area as plaintiff, but she made no move to return to her husband. We held plaintiff was entitled to a divorce on the ground of desertion.

On the basis of precedent established by the above cases, and many others we have previously cited, we hold plaintiff is entitled to a divorce on the ground of desertion.

The decision and judgment of the trial court is reversed with instructions to the District Judge to enter decree in accordance herewith.—Reversed.

All JUSTICES concur except SMITH, J., not sitting.