ELWOOD HANSEN, appellee, v. MILDRED HANSEN, appellant.

## No. 51128.

(Reported in 125 N.W.2d 139)

Franklin Jaqua and John P. Mansfield, both of Humboldt, for appellant.

Melvin L. Baker, of Humboldt, for appellee.

THOMPSON, J.—This appeal brings before us for review the record of the unhappy—and intermittent—married life of an Iowa farmer and his career-conscious wife. The plaintiff-husband petitioned for a divorce on the ground of statutory desertion; the defendant cross-petitioned, basing her claim on cruel and inhuman treatment such as to endanger her life and health. The trial court found the equities to be with the plaintiff and entered its decree and judgment granting him a divorce as prayed, with a property allowance to the defendant. The defendant alone appeals.

Our study of the record brings us to the conclusion that the defendant was from the inception of the marriage more interested in following her profession as a registered nurse than in performing her duties to her family as a wife and mother. She had finished her nurse's training course in Chicago very shortly before the marriage of the parties, in 1924. Within a few weeks after the wedding she returned to Chicago to practice nursing; and her absences from that time until 1949, when she finally and permanently left the home, were frequent and at times extended. It is impossible to say from the record what proportion of her time she devoted to her profession and what time she spent at home. The plaintiff estimated that she was away about one half of the time; the elder daughter, Eloise, whose deposition was offered by the defendant, says: "She was gone so many times I cannot remember each time how long she was gone."

Three children were born of the marriage: Eloise, Alvin,

and Lorraine. All were adults and married at the time of the trial. The defendant left Eloise in the care of others when she was a baby; when Alvin was but a few weeks old, she placed him with friends in Milwaukee for about a year; and she was absent many other times following her profession in Chicago and other places, when the children were small. At times she employed women to come into the home to care for them; and at times they were left with the plaintiff.

The parties' circumstances were not good when they were married. The plaintiff was a farm laborer, and for some years their various homes were tenant houses. The plaintiff's financial condition and earning power were of course known to the defendant when she married him; but she soon demonstrated that "for better or for worse" was not exactly what she had in mind. She preferred to live elsewhere much of the time; and her earnings were her own, with some small exceptions. She bought some inexpensive furniture; she paid the expenses of her confinements when the first two children were born, but these were not large since she did not go to hospitals. She also paid the wages of the women whom she sent in to care for the small children when she was away; but generally her contribution to the family expense was of small material consequence.

Her indifference to her family is also shown by her attitude toward her son, Alvin, after her permanent departure in 1949. She was at the time nursing in Fort Dodge, not far from the farm then owned by the plaintiff and where their home was. She says she attended the commencement exercises when Alvin graduated from high school; but she did not make her presence known and none of the family saw her. She did not attend Alvin's wedding, giving as the reason that she was not invited; but Alvin's wife tells in detailed and believable evidence that an invitation was sent her. When she departed, never to return, in April of 1949, the younger daughter, Lorraine, was 15 years of age, and had started to attend high school. She left her with the plaintiff, and Lorraine made her home with him until she graduated some four years later.

██ I. The purpose of detailing these facts is found in their bearing upon the reason the defendant left the home in

1949. In order to prevail, the burden was upon the plaintiff to substantiate his charge of desertion by showing these things: 1, the cessation of the marriage relationship; 2, the intent of the defendant to desert; 3, the continuation of the desertion for at least two years; and 4, absence of consent to the desertion, or misconduct justifying it, on the part of the deserted party. Sections 598.8, paragraph 2, and 598.9, 1962 Code of Iowa; Bunger v. Bunger, 249 Iowa 938, 941, 90 N.W.2d 1, .3. There is no dispute as to the proof of the first three elements; but the defendant says that she was finally driven from the home in 1949 by physical abuse, threats, and strong urging by the plaintiff that she "get out".

So it is necessary to evaluate the evidence as to the real reason she left. The defendant testified to several strikings and kickings by the plaintiff, and to his profane requests that she leave. The son, Alvin, who resided on the farm at all material times, testified that he never saw or heard any of these claimed attacks or threats or any invitation to leave. The elder daughter, Eloise, who testified by deposition offered by the defendant, said "I honestly do not remember whether Mr. Hansen threatened my mother in any way or physically abused her in any way. While we were children in school, they may have had fights. I did not hear any threats. I would not know."

The daughter Lorraine corroborated her mother to a considerable extent on the matter of physical abuse and threats. She, also, testified by deposition. She gave no dates when these things were said to have occurred. But it is significant that she said: "Mr. Hansen did threaten and abuse her in 1939. I did not see or hear any threats or physical abuse in 1949."

Both the son and the elder daughter corroborate the plaintiff that he did not drive the defendant from the home by misconduct. True, their testimony is negative; but they were in a position to see and hear, and they saw and heard nothing. The younger daughter saw and heard no threats or abuse in 1949, the time when the defendant left. There is the familiar rule that we give weight to the fact findings of the trial court when credibility of the witnesses is to be determined; and this applies to the testimony of the plaintiff, the defendant, the son,

Alvin, and other witnesses who appeared personally. The court believed the plaintiff and his witnesses, and found that he had carried the burden of proof on the disputed point. The defendant's course of conduct over the 25 years of married life strongly supports this conclusion. She appears at all times to have been nursing-minded, to the detriment of her interest in her family.

These observations apply equally to the defendant's cross-petition, which asked a divorce on the ground of cruel and inhuman treatment. The burden was upon her here, and we think she failed to carry it. In fact, under the claims and counterclaims here, if the plaintiff was entitled to a divorce on the ground of desertion, the defendant must be held to have failed to prove her case of cruelty. We reach the same conclusion as did the trial court.

II. The trial court gave the defendant her own property, and an allowance of $1600 to be paid by the plaintiff. The record shows that after some nine lean years during which the plaintiff worked as farmhand, he received an inheritance of $5000; and with this he arranged to purchase a 129-acre farm. This farm has at all times since been his home, the home of the children until they were grown, and of the defendant during such times as she saw fit to stay there, until her final exit in 1949. It is not a top grade farm, but is worth from $150 to $225 per acre, according to which expert one chooses to believe. The price asked for it in 1933 was $5800, and the plaintiff's inheritance obviously lacked $800 of stretching so far. He arranged to borrow the needed sum by a mortgage on the farm, but the defendant refused to sign the papers; and it was only because he was finally able to get a bank loan on his note that the plaintiff was able to go through with the purchase. He has worked on and improved the farm, supported the children and educated them through high school, and now has a substantial property. The defendant has at all times refused to sign joint income tax returns, and when the plaintiff sold a restaurant property in town which he had acquired she refused to sign the deed; so that the transaction was not closed at the time of the trial below. Plaintiff's competence has been achieved with opposition rather than cooperation from her.

On the other hand, the defendant has an inheritance of nearly $9000; she has whatever she has saved from her earnings; the record shows she bought and paid for a bond in an unstated amount; and her contributions to the family and its support and welfare have been small. Her own property is not disturbed by the decree; we see no reason in equity under the circumstances here why she should be entitled to a greater share in the plaintiff's hard-earned accumulations than the trial court gave her. Its decree was in all respects right.—Affirmed.

GARFIELD, C. J., and HAYS, MOORE, SNELL, STUART and THORNTON, JJ., concur.

LARSON and PETERSON, JJ., dissent.