RALPH S. BENNETT, appellant, v. ETHEL ALLEN BENNETT, appellee.

No. 52124.

July 14, 1966.

Milani & Milani, of Centerville, for appellant.

D. W. Harris, of Bloomfield, for appellee.

BECKER, J.—Plaintiff filed action for divorce on the grounds of desertion. After three days of trial, action was dismissed. Plaintiff appeals.

The parties here contesting were married on December 4,

1960. They separated permanently on May 21, 1962. At the time of their marriage, plaintiff was 62 years of age and defendant was 55 years of age. Plaintiff had been married three times before, each marriage having ended in a divorce upon the complaint of his wife. Defendant had been married once, her marriage was terminated by the death of her husband in September 1957. At the time of marriage each had considerable property.

The plaintiff and defendant met in March 1960 some nine months prior to marriage. At that time plaintiff was married to his third wife. That marriage culminated in divorce on October 17, 1960, some two months before these parties were married. Defendant knew that plaintiff was married at the time she commenced keeping company with him.

Prior to marriage plaintiff and defendant entered into a purported antenuptial agreement prepared by defendant's attorney known as exhibit P-1.

Plaintiff is a large landowner and farmer in Appanoose County. At the time of his marriage he owned 1700 acres of farmland, specializing in cattle raising by purchasing beef cattle in the spring, fattening them on grass during the summer, and marketing them in the fall. His principal assets are the land and farm machinery used in the operation. In the ordinary course of his business he makes extensive use of bank credit to finance his cattle buying. He does not have much in the way of highly liquid assets.

At the time of marriage defendant owned a 127-acre farm partially in the town of Moulton upon which she and her husband lived prior to his death in September 1957. Defendant also owns another 120-acre farm, not as good land or as well improved as the home farm.

Further factual background will be supplied in connection with the discussion of the following propositions. To detail all of the evidentiary contentions of the parties would unduly lengthen this opinion.

I. Plaintiff relies on desertion as grounds for divorce. The oft quoted case of Kupka v. Kupka, 132 Iowa 191, 192, 109 N.W. 610, states:

"To warrant a decree of divorce on this ground the defendant must have willfully deserted her husband, and absented her-

self without reasonable cause for the space of two years. Section 3174, Code. Analyzing this it will be found that, as said by Mr. Nelson in his work on Divorce and Separation, section 51, 'four elements are essential to a divorce because of desertion: (1) The cessation of the marriage relation, (2) The intent to desert, (3) The continuance of the desertion during the statutory period, and (4) the absence of consent or misconduct of the deserted party.' See Rose v. Rose, 50 Mich. 92 (14 N.W. 711). Separation is not necessarily desertion. The latter may occur long after the former has taken place, and even when both occur at the same time the guilty party is not always the one who leaves the matrimonial home. Doolittle v. Doolittle, 78 Iowa 691 [43 N.W. 616, 6 L. R. A. 187]; Warner v. Warner, 54 Mich. 492 (20 N.W. 557)."

See also Bunger v. Bunger, 249 Iowa 938, 90 N.W.2d 1; Nelson v. Nelson, 246 Iowa 760, 68 N.W.2d 746 (where element 4 is paraphrased to read "absence of reasonable cause").

█ Plaintiff's evidence sustains his case on the first two grounds. The trial decree finds that there was a clear showing that there was a cessation of the marriage relation on May 21, 1962, and neither party has offered in good faith to resume the marriage relation. Further, defendant's action in leaving the home was a willful separation with intent to remain separate and apart from plaintiff. Defendant's only corroboration from his own evidence in the case occurs at this point. He produced independent testimony that subsequent to the separation defendant claimed her homestead exemption on her own farm for the years 1963, 1964 and 1965, and that she listed her telephone in 1963 in the name of Ethel Post Allen, her name by a former marriage. The court, on this and other evidence, properly found for plaintiff in connection with these issues, but the decision on the last two elements was adverse to plaintiff.

II. The trial decree finds that the third element was not established. This action was commenced on June 9, 1964, two years, one month after the separation. However, on July 10, 1962, plaintiff commenced a divorce action against defendant charging cruel and inhuman treatment, he dismissed that action without prejudice on October 8, 1962.

On November 17, 1962, defendant filed petition for divorce

against plaintiff charging cruel and inhuman treatment. This action was dismissed by her without prejudice on April 2, 1963.

If the time that either or both of the cases were pending is subtracted from the period from May 21, 1962, to June 9, 1964, it is apparent that the two-year statutory requirement is not met.

The general rule is well stated at 80 A. L. R.2d 855, 857, in an annotation which exhaustively reviews the cases on the subject.

"A majority of the cases passing on the question support the rule that the time of the pendency of a prior matrimonial action may not be included in computing the period of desertion necessary to support a later suit for divorce on that ground. The reasoning most commonly accepted for this doctrine is that it is against public policy for parties engaged in matrimonial litigation to live together, no matter which spouse brings the action and no matter what ground for relief is asserted. The rule clearly embraces prior divorce suits, whether for absolute or limited divorce, and has been applied in some instances, but not invariably, to suits for alimony or separate maintenance. It has also been applied in a few instances to prior suits for annulment of marriage."

The one Iowa case brought to our attention, Carr v. Carr, 212 Iowa 1130, 237 N.W. 492, supports the general rule without citation of authority. Plaintiff points to the facts in that case which involved an adjudication of insanity against the defendant-wife and a divorce action which was successful at the trial level but reversed on appeal as distinguishing factors. These factors are not present in the many cases, representing many jurisdictions, where the rule has been applied.

While the annotation notes a large number of cases which recognize exceptions to the rule, we find no facts here to bring this case within any of the generally recognized exceptions. The principal exception is that the divorce action relied upon to toll the statutory desertion time must have been brought in good faith. Plaintiff cannot, and does not, claim that the action he started in July 1962 was commenced in bad faith. Nor does he make such assertions as to defendant's November 1962 action. As is often the case, this rule must be applied in light of the

circumstances of each case. We agree with the trial court that the rule is applicable here. See 27A C. J. S., Divorce, section 56(4)c, page 181; 24 Am. Jur.2d, Divorce and Separation, section 108, page 268.

III. But the determinative issue in this case deals with the finding that plaintiff failed to carry his burden of proof as to element four; i.e., absence of consent to the desertion, or misconduct justifying it, on the part of plaintiff.

There is a great deal of conflict on the essential evidence touching on this latter point. Much depends upon the credibility of the witnesses. In such cases this court gives weight to the fact findings of the trial court, although not bound by them. Rules of Civil Procedure 344(f)7.

The decree from which plaintiff appeals contains a careful and extended finding of fact. It is unnecessary to repeat these findings in detail. Our examination of the record convinces us that the parties acted as a husband and wife should act, until they disagreed on matters pertaining to management of the real estate they owned in separate names. From those disagreements stems a picture of domestic discord that serves as a backdrop for the final separation.

As to the separation the trial decree states:

"The Court is satisfied that the immediate cause of defendant's leaving plaintiff's home on May 21, 1962, was the outgrowth of a quarrel between the parties on May 19, 1962, concerning a proposed cattle buying trip to Mexico, Missouri, with one Don Peterson, a business acquaintance of plaintiff, with defendant insisting that she be permitted to go and plaintiff equally adamant that no one was going to tell him how, when or with whom he might go on such a trip. Plaintiff admits that he ordered defendant to stay out of the bedroom and refused to permit her to share the conjugal bed, while denying that he ordered her to leave the house as testified to by defendant. It makes little difference whether he expressly ordered her to leave the home on May 21, 1962, as the evidence shows beyond any question that plaintiff carried over the quarrel from Saturday to Sunday, the 20th, refused to talk to defendant or discuss the matter further and when defendant was denied admittance to the bedroom, this was understandably a rejection by plain-

tiff of the defendant and the Court is satisfied that plaintiff by his acts and conduct clearly indicated to defendant that he desired her to leave and return to her home in Moulton. He assuredly made no protest, and the likelihood is that he made known his will that she leave. When the Court observes the authoritative disposition of plaintiff as evidenced by his demeanor on the stand, it is inconceivable that defendant's leaving was without his consent, if not by his express direction."

While the trial court found it unnecessary to decide whether plaintiff expressly ordered defendant to leave the house on the day she left, we note the record in this regard. "On the following morning, he got up, and when I heard him, I got up too. I don't remember whether I got breakfast or not, but I believe I asked him if he would eat if I would get him breakfast, and he said all he wanted was for me to get out of the house, and I said 'Ralph, you surely don't mean that.' He said, 'want you out of here, you absolutely get out' and I don't remember whether I ate breakfast that morning or not. I got some of my things together. I really didn't want to go. I called to him and said, 'Ralph, are you sure this is what you really want?' And he said 'I want you out of here, absolutely, I want you out.' And I said 'I want you to be sure,' and he said he was sure 'that he wanted me to get out and he told me to put my things in his car, and bring the car back, and he would take me over.' "

Plaintiff denies having made these statements. There are numerous other conflicts on factual matters in the record. On the great majority of such conflicts defendant produced corroborative evidence. In the matters of conflict plaintiff's testimony is singularly lacking in corroboration. Defendant's evidence is the more worthy of belief.

Do the foregoing findings of fact indicate absence of consent on the part of plaintiff, or presence of misconduct or both?

As stated in Bunger v. Bunger, supra, on page 951 of 249 Iowa, "In our early judicial history we held in two cases as to the matter of reasonable cause, that cause must be such as would justify a divorce in favor of the party leaving. Pierce v. Pierce, 33 Iowa 238, 240; Lane v. Lane, 67 Iowa 76, 24 N.W. 601. We have modified this strict rule in Tipton v. Tipton;

Schaefer v. Schaefer; and Nelson v. Nelson, all supra. However, the statutory provision of 'reasonable cause' must be respected. The cause must be definite, substantial and such that reasonable minds would conclude that the marriage was a failure, and the departure of the spouse was not a mere passing fancy, nor a flimsy or baseless excuse."

■ The record here indicates that in addition to his statement that defendant should leave (denied by plaintiff), plaintiff had failed or refused to talk to defendant for a period of in excess of 24 hours prior to that statement, and upon taking her to her home in Moulton he told defendant he wanted her to get a divorce (admitted by plaintiff). Defendant's separation here was not without fault on the part of plaintiff.

IV. The trial court's opinion re the requirements in part four was based on separation with plaintiff's consent. In addition to the evidence already reviewed, it appears without dispute that plaintiff helped defendant load her belongings into his car. Further he accepted the keys to his car, key to the house, credit card, drove defendant home, and then told her "I want you to get a divorce."

Subsequently, plaintiff filed suit for divorce himself but dismissed without prejudice, asked defendant to get a divorce, accused defendant of stealing his money while they were living together and has now invited one of his former wives back to live with him on the farm. In regard to this latter matter, we think it best to quote plaintiff's testimony as abstracted in the record.

"My former wife came and lived with me on the farm this last time. I believe, in the latter part of July. I was over in Illinois and lonesome and I called her up and talked to her. I saw her. I took her out to dinner. I did not bring her back to Iowa at that time.

"When she leaves the farm, she goes with me. She goes to sales with me, but not to social gatherings. Once in a great while she goes to a public gathering with me. Occasionally we go to Ottumwa to the wrestling matches on Monday evening. I have taken her with me."

It is not surprising that no overtures looking toward reconciliation have been made by either side. Consent at time of

separation has been amply demonstrated. The consent seems to be as firmly established now as it was at the initial separation.

■ V. Finally, plaintiff contends that the antenuptial agreement should be canceled. The divorce having been denied there was no proper basis for consideration of the validity or effect of such agreement. The trial court properly specifically found that it did not pass on such matters, nor do we.—Affirmed.

All JUSTICES concur.